**24-1523, 24-1525**

IN THE

# United States Court of Appeals

### FOR THE FEDERAL CIRCUIT

◆━◆

DYNAMITE MARKETING, INC.,

*Plaintiff-Appellee,*

— v. —

THE WOWLINE, INC., SHERMAN SPECIALTY LLC, SHERMAN SPECIALTY, INC.,

*Defendants-Appellants,*

WWW.SUPERIORPROMOS.COM, WWW.USIMPRINTS.COM, WWW.4ALLPROMOS.COM,
UNKNOWN WEBSITES 1-10, VARIOUS JOHN DOES 1-10, UNKNOWN ENTITIES 1-10,

*Defendants.*

DYNAMITE MARKETING, INC.,

*Plaintiff,*

— v. —

4TH DIMENSON INNOVATIONS, INC., by and through
its former officer Laerik Cooper, LAERIK COOPER,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
JUDGE GARY R. BROWN
NOS. 2:19-CV-03067-GRB-LGD AND 2:22-CV-01627-GRB-AYS

## CORRECTED BRIEF FOR PLAINTIFF-APPELLEE

VINCENT MCGEARY
MICHAEL CUKOR
MCGEARY CUKOR LLC
150 Morristown Road, Suite 205
Bernardsville, New Jersey 07924
(973) 200-4837

*Attorneys for Plaintiff-Appellee*

## U.S. Design Patent D751,877, Claim (Appx28)



**FIG. 2**

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 24-1523 |
| **Short Case Caption** | Dynamite Marketing, Inc. v. The WowLine, Inc. |
| **Filing Party/Entity** | Dynamite Marketing, Inc. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: March 15 2024 29 Feb. 2024

Signature: _____

Name: Michael Cukor

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Dynamite Marketing, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| Sergei Orel (terminated) | | |
|---|---|---|
| **Sergei Orel, LLC (terminated)** | | |
| **Gearhart Law, LLC (terminated)** | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)   ☑  No   ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF RELATED CASES ..................................................... viii

STATEMENT OF JURISDICTION ..............................................................1

STATEMENT OF THE ISSUES...................................................................1

STATEMENT OF THE CASE.......................................................................1

    A.  Facts Relevant To The Appeal ..........................................................1

    B.  Statement Of Procedural History .....................................................7

SUMMARY OF THE ARGUMENT ............................................................9

ARGUMENT ............................................................................................. 12

I.    STANDARDS OF REVIEW ............................................................ 12

    A.  Denials of JMOLs, Remittitur and New Trial Motions ................ 12

    B.  Use of a Jury on Inventorship ...................................................... 15

    C.  Evidentiary Rulings...................................................................... 15

    D.  Harmless Error ............................................................................. 16

    E.  Enhanced Damages and Attorney Fees ....................................... 17

II.   THE COURT SHOULD REJECT SHERMAN'S STANDING
    ARGUMENT ................................................................................... 18

    A.  Sherman Has No Right To Appeal the § 256 Judgment ............... 18

    B.  Sherman Failed to Object and Consented to the Jury ................... 19

    C.  A Jury Was Appropriate Given Dynamite's Claims ..................... 23

    D.  Using a Jury Was Harmless to Sherman ...................................... 24

    E.  Cooper Failed to Present Overwhelming Evidence of
    Inventorship ................................................................................. 25

III.   THERE IS SUFFICIENT EVIDENCE OF INFRINGEMENT ............28

IV.   SHERMAN FAILED TO PROVE FUNCTIONALITY WITH OVERWHELMING EVIDENCE ........................................................32

V.   SHERMAN FAILED TO PROVE OBVIOUSNESS WITH OVERWHELMING EVIDENCE ........................................................34

    A.  Sherman Offered No Prior Art References at Trial ......................34

    B.  Under either the *Rosen* and *Durling* or *LKQ* tests, Sherman Failed to show obviousness ..........................................................35

    C.  Dynamite presented substantial evidence of non-obviousness ...................................................................................37

VI.   SUBSTANTIAL, PROPERLY ADMITTED, EVIDENCE SUPPORTS THE DAMAGES VERDICT ...........................................39

    A.  The Court Properly Admitted Schenk's Testimony ......................39

    B.  There Was Sufficient Evidence on the Absence of Acceptable Non-infringing Alternatives to Support the Jury Verdict .......................................................................................43

    C.  There Is Sufficient Evidence on the Demand for the Patented Product to Support the Jury's Verdict............................47

VII.  THE COURT CHARGED DAMAGES APPROPRIATELY ...............57

VIII. THE DISTRICT COURT PROPERLY AWARDED ATTORNEY FEES AND COSTS.....................................................61

IX.   CONCLUSION ...........................................................................64

CERTIFICATE OF COMPLIANCE ..........................................................65

CERTIFICATE OF SERVICE ...................................................................66

# TABLE OF AUTHORITIES

## Cases

*Amazon.com v. PersonalWeb Techs. (In re PersonalWeb Techs.)*,
   No. 2021-1858 (Fed. Cir. Nov. 3, 2023) ............................................. 62

*Application of Glavas*,
   230 F.2d 447 (C.C.P.A. 1956) ........................................................... 36

*Bayer CropScience AG v. Dow AgroSciences LLC*,
   851 F.3d 1302 (Fed. Cir. 2017) ......................................................... 61

*Bayer Healthcare LLC v. Baxalta, Inc.*,
   989 F.3d 964 (Fed. Cir. 2021) ........................................................... 56

*Bic Leisure Prods. v. Windsurfing Int'l*,
   1 F.3d 1214 (Fed. Cir. 1993) ....................................................... 53, 54

*Bowles v. Russell*,
   551 U.S. 205 (2007) .......................................................................... 18

*Broadnax v. City of New Haven*,
   415 F.3d 265 (2d Cir. 2005) .......................................... 13, 15, 22, 25

*Depuy Spine, Inc. v. Medtronic Sofamor Danek*,
   567 F.3d 1314 (Fed. Cir. 2009) .................................................. 44, 47

*Earl v. Bouchard Transp. Co.*,
   917 F.2d 1320 (2d Cir. 1990) ............................................................ 14

*Elletson v. Bonded Insulation Company Inc.*,
   272 A.D.2d 825 (N.Y. App. Div. 2000) ............................................. 59

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
   889 F.3d 1291 (Fed. Cir. 2018) ......................................................... 63

*Ethicon, Inc. v. U.S. Surgical Corp.*,
   135 F.3d 1456 (Fed. Cir. 1998) ......................................................... 28

*EZ Dock, Inc. v. Schafer Systems, Inc.*,
   Civil No. 98-2364 (RHK/AJB) (D. Minn. Mar. 8, 2003).................... 42

*Fiskars, Inc. v. Hunt Mfg. Co.*,
   279 F.3d 1378 (Fed. Cir. 2002) ......................................................... 45

*Galdieri-Ambrosini v. Nat'l Rlty. Dev. Corp.*,
  136 F.3d 276 (2d Cir. 1998) ............................................................. 49

*Georgetown Rail Equip. Co. v. Holland L.P.*,
  867 F.3d 1229 (Fed. Cir. 2017) ..................................... 17, 47, 50, 51

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017) ......................................................................... 61

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) ..................................................................... 17

*Henry v. Wyeth Pharms., Inc.*,
  616 F.3d 134 (2d Cir. 2010) ............................................................. 16

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  572 U.S. 559 (2014) ......................................................................... 17

*Ismail v. Cohen*,
  889 F.2d 183 (2d Cir. 1990) ............................................................. 14

*Ivera Med. Corp. v. Hospira, Inc.*,
  801 F.3d 1336 (Fed. Cir. 2015) ........................................................ 34

*Jarvis v. Ford Motor Co.*,
  283 F.3d 33 (2d Cir. 2002) .................................................... 15, 20, 21

*Jennings v. Yurkiw*,
  18 F.4th 383 (2d Cir. 2021) .............................................................. 14

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
  381 F.3d 1142 (Fed. Cir. 2004) ........................................................ 14

*L.A. Gear, Inc. v. Thom Mcan Shoe Co*,
  988 F.2d 1117 (Fed. Cir. 1993) ........................................................ 33

*Legg v. Ulster County*,
  979 F.3d 101 (2d Cir. 2020) ....................................................... 12, 13

*Lexington Furniture Indus. v. The Lexington Co.*,
  No. 22-2993 (2d Cir. Dec. 26, 2023) ................................................ 23

*LKQ Corp. v. GM Glob. Tech. Operations*,
  No. 2021-2348 (Fed. Cir. May 21, 2024) .......................................... 37

*Lloyd v. Morton*,
  18-CV-6979 (WFK) (E.D.N.Y. Feb. 14, 2023) ................................. 40

*Lore v. City of Syracuse*,
670 F.3d 127 (2d Cir. 2012) ........................................................ 16, 24

*Marandola v. U.S.*,
518 F.3d 913 (Fed. Cir. 2008) ............................................................ 18

*MCV Inc. v. King-Seeley Thermos Co.*,
870 F.2d 1568 (Fed. Cir. 1989) .......................................................... 28

*Micro Chemical, Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003) .................................................... 41, 45

*Minco, Inc. v. Combustion Engineering, Inc.*,
95 F.3d 1109 (Fed. Cir. 1996) .................................................... 58, 59

*Modine Mfg. Co. v. Allen Group, Inc.*,
917 F.2d 538 (Fed. Cir. 1990) .................................................... 15, 21

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ........................................................................ 17

*Ortiz v. Jordan*,
562 U.S. 180 (2011) ........................................................................ 22

*In re PersonalWeb Techs. LLC*,
85 F.4th 1148 (Fed. Cir. 2023) ........................................................ 17

*Raniere v. Microsoft Corp.*,
887 F.3d 1298 (Fed. Cir. 2018) ........................................................ 18

*Reeves v. Sanderson Plumbing Products, Inc.*,
530 U.S. 133 (2000) .................................................................. 13, 25

*In re Rembrandt Techs., LP Pat. Litig.*,
899 F.3d 1254 (Fed. Cir. 2018) ........................................................ 61

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
853 F.3d 1370 (Fed. Cir. 2017) ........................................................ 56

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
563 F.3d 1358 (Fed. Cir. 2009) .................................................... 13, 14

*Schron v. Troutman Sanders LLP*,
20 N.Y.3d 430 (N.Y. 2013) .............................................................. 59

*SEB v. Montgomery Ward & Co., Inc.*,
594 F.3d 1360 (Fed. Cir. 2010) .................................................... 13, 25

v

*Shum v. Intel Corp.*,
  499 F.3d 1272 (Fed. Cir. 2007) ......................................................... 23

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
  926 F.2d 1161 (Fed. Cir. 1991) ......................................................... 52

*Stampf v. Long Island R. Co.*,
  761 F.3d 192 (2d Cir. 2014) .............................................................. 14

*Syntel Sterling Best Shores v. The Trizetto Group*,
  68 F.4th 792 (2d Cir. 2023) ........................................ 12, 13, 25, 28, 44

*Teets v. Chromalloy Gas Turbine Corp.*,
  83 F.3d 403 (Fed. Cir. 1996), *cert. denied*,
  519 U.S. 1009 (1996) .................................................................. 21, 27

*Tesser v. Board of Education*,
  370 F.3d 314 (2d Cir.2004) .......................................................... 16, 17

*TWM Mfg. Co. v. Dura Corp.*,
  789 F.2d 895 (Fed. Cir. 1986) ......................................................... 46

*U.S. Bank National Ass'n v. PHL Variable Life Insurance*,
  112 F.Supp.3d 122 (S.D.N.Y. 2015) ................................................ 43

*United States v. Litak*,
  889 F.3d 56 (2d Cir. 2018) .......................................................... 15, 16

*United States v. McGinn*,
  787 F.3d 116 (2d Cir. 2015) ............................................................. 16

*United States v. Rea*,
  958 F.2d 1206 (2d Cir. 1991) ........................................................... 40

*United States v. Williams*,
  506 F.3d 151 (2d Cir. 2007) ........................................................ 15, 16

*Wechsler v. Macke*,
  486 F.3d 1286 (Fed. Cir. 2007) ....................................................... 57

**Statutes**

28 U.S.C. § 1291 ............................................................................... 22

28 U.S.C. § 1295(a)(1) ........................................................................ 1

35 U.S.C. § 256 ......................................................................... *passim*

35 U.S.C. § 284 ................................................................. 17, 62, 63

35 U.S.C. § 285 ................................................................. 17, 62, 63

**Rules**

Fed. R. Civ. P. 39(c)(2) ................................................. 15, 22, 23

Fed. R. Civ. P. 50(a) ..................................................... 12, 13, 25

Fed. R. Civ. P. 50(a)(1) ............................................................13

Fed. R. Civ. P. 50(b) ..................................................... 12, 13, 25

Fed. R. Civ. P. 51 ........................................................... 15, 20, 21

Fed. R. Civ. P. 51(b)(2) ...........................................................20

Fed. R. Civ. P. 51(c)(2) ....................................................... 20, 21

Fed. R. Civ. P. 59 .....................................................................14

Fed. R. Civ. P. 61 .....................................................................16

Fed. R. Evid. P. 103(a)(2) .......................................................16

Fed. R. Evid. P. 702 .................................................................16

## STATEMENT OF RELATED CASES

Appellee Dynamite Marketing, Inc. ("Dynamite") is not aware of any case pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal. No other appeal in or from the same civil action or proceeding in the district court from which this appeal arises has previously been before this Court or any other appellate court.

## STATEMENT OF JURISDICTION

Dynamite agrees that the Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) to review the final judgment of infringement in favor of Dynamite and against Defendants-Appellants The WowLine, Inc., Sherman Specialty, Inc., and Sherman Specialty LLC (collectively, "Sherman").

Dynamite disagrees that the Court has jurisdiction to review the judgment dismissing the claim 4th Dimension Innovations, Inc. and LaErik Cooper (collectively, "Cooper") brought under 35 U.S.C. § 256, including whether the district court erred in using a jury.

## STATEMENT OF THE ISSUES

Sherman's standing argument relies on this Court reversing the district court's adjudication of Cooper's § 256 inventorship claim and entering judgment in Cooper's favor. But Cooper did not appeal the judgment against him. This raises the additional questions of whether Sherman has a right to appeal the district court's decision on Cooper's claim to inventorship and whether the Court has jurisdiction to disturb the judgment.

## STATEMENT OF THE CASE

### A. Facts Relevant To The Appeal

Alexander Shlaferman ("Shlaferman") conceived of a credit-card-sized and shaped multitool in about January 2013. Appx4339-Appx4348; Appx4614.  After

conceiving the idea, Shlaferman searched for a freelance CAD draftsman. Appx4342-48. Shlaferman found Cooper's website, which advertised freelance services and assured customers that Cooper knew "your idea is exactly that 'your idea.'" Appx5701-03. Shlaferman engaged Cooper and Cooper invoiced Shlaferman on an hourly basis. Shlaferman paid all Cooper invoices. Appx4367.

Shlaferman engaged a patent attorney who filed a patent application on February 26, 2014. Appx4380-81. Shlaferman paid Cooper to work with the patent attorney and prepare the drawings for the application. Shlaferman's patent attorney identified Shlaferman as the sole inventor, drafted the patent claim, and submitted the drawings Cooper prepared. *Id*. Cooper had patent experience, knew of the application, and had access to Shlaferman's patent attorney. Appx4371-72; Appx4382-83. Cooper made no claim of inventorship to Shlaferman or the patent attorney. Appx4601-02.

Shlaferman assigned all his rights in and to the patent application, reserving no rights to himself, to his company, Vante Inc. ("Vante"), on January 16, 2015. Appx4384-85, Appx5664-66. U.S. Design Patent D751,877 ("the D'877 patent") issued with Shlaferman as the sole named inventor on March 22, 2016. Appx5659-63. The patent claims a design for a multitool:



Appx26.

On May 18, 2018, the patent attorney prepared an assignment from Vante to Dynamite, which Shlaferman executed for Vante and which the attorney recorded in the Patent Office. Appx2220-22. There were no other assignments or transfers of the D'877 patent. As of May 18, 2018, Dynamite owned all rights, titles, and interests to the D'877 patent, including the right to sue for past infringement.

Dynamite manufactured and sold multitools with the patented design beginning in 2014 and continuing to the present under the name Wallet Ninja. An example of Dynamite's product is shown below:



Appx6410.

      Dynamite's Wallet Ninja was a commercial success (Appx4879; Appx6411-12), and Dynamite sold it through retail channels and in the promotional products market. Appx6410.  Customers purchase promotional products to give away as part of a promotional activity, as opposed to reselling.  Appx6411.  Promotional products are a form of advertising where the advertising value of the product is determined in part by the impression the product makes, as well as the location and length of time the recipient keeps the product (and is exposed to the advertising).  Appx4720-29.  Dynamite's Wallet Ninja was a desirable promotional product because, among other reasons, of its success in the retail market and its patented design.  Appx4733-35; Appx4738-39; Appx4881.

      Sherman imports promotional products from China and sells them in the United States.  Appx5025.  Sherman scours the market for product ideas in places

such as competitor catalogs and competitor websites.  Appx5030. In 2017, Robert

Davila, Sherman's Director of Merchandising, sent emails with a photo of

Dynamite's Wallet Ninja to three manufacturers in China, asking for price quotes

to duplicate Dynamite's product. Appx5078-9; Appx5949-54.

Sherman then imported and sold a multitool, which it called the TOL4, with

the same shape, dimensions, and design as Dynamite's patent-protected product:



Appx6033. Sherman also sold the TOL4 as the TOL8 and S11171 products

when printed with a camouflage or hemp leaf background as opposed to the solid

colors of the TOL4.  Appx5677.

 In February 2018, Dynamite notified Sherman of its infringement and asked

Sherman to cease making the infringing product. Appx5037. Sherman denied any

liability.  Appx5903. Sherman continued to sell through its TOL4 products and

purportedly made slight but unmeaningful changes (which the district court

referred to as a "faux redesign.") Appx12.  Sherman did not change the part

number and continued to sell the TOL4 product through at least February 2022.

Appx4; Appx6415.



Appx5672.

Sherman never tracked separately in inventory or in its accounting system sales of the original TOL4 versus the revised design. Appx5100-03. Sherman never introduced any evidence at trial of the quantities it sold of its alleged original TOL4 as compared to the revised design. Sherman was unsure if it ever stopped selling the TOL4, and as of trial Sherman maintained TOL4 products in inventory. Appx5102-3.

Sherman sold approximately 800,000 units, and the TOL4 was its best-selling tool. Appx6418. Sherman branded the product with its WOW Line logo for use as its own promotional item. Appx5084.



Appx6404.

Sherman continued selling the accused TOL4 products after the
infringement action commenced.  Appx6415.  Sherman also found Cooper and
entered into an agreement where Cooper, for the first time in about 10 years,
alleged an ownership interest in the D'877 Patent and then attempted to assign that
interest to Sherman.  Appx5730-37. In the litigation between Cooper and
Dynamite, Sherman paid Cooper's legal fees and expenses. Appx5730.

## B.  Statement Of Procedural History

On May 22, 2019, Dynamite sued Sherman for willful patent infringement in
the Eastern District of New York (EDNY Action). Sherman denied infringement
and alleged the D'877 patent was invalid as obvious and for claiming purely
functional elements. Appx397.

On September 21, 2021, Dynamite filed a Complaint in the Middle District
of Florida (Florida Action) against Cooper, seeking a Declaratory Judgment that

Dynamite was the sole owner of the D'877 patent and that its principal, Shlaferman, was the sole inventor. Appx503.

Cooper counterclaimed in the Florida Action under 35 U.S.C. § 256 and sought a declaration that he was either the sole owner or a co-owner of the D'877 patent. Pursuant to their agreement, Sherman controlled Cooper's case and Cooper agreed to cooperate with Sherman to defeat Dynamite's patent infringement claim. Sherman purported to obtain an assignment of Cooper's rights should Cooper prevail, but Sherman did not intervene in the Florida Action. Appx5736.

The Florida Action was transferred to the Eastern District of New York and consolidated with the EDNY Action over Sherman's objection. Appx46; Appx520. Sherman did not amend its pleading or file any claim of its own alleging an interest in the D'877 Patent in the consolidated case. Sherman, however, argued that Dynamite lacked standing if Cooper prevailed and that Cooper's claim should proceed first. Appx1552; Appx3355.

The district court conducted a bifurcated trial. In the first phase, the jury determined whether Cooper was an inventor and, if he was, whether Dynamite nevertheless owned the D'877 Patent. Appx3485. Neither Cooper nor Sherman moved for a JMOL prior to submission of inventorship to the jury. Appx4689.  The jury decided that Cooper failed to prove he was a co-inventor of the D'877 Patent.

After the verdict against him, Cooper moved for a JMOL on inventorship, but Sherman did not join or move separately.  Appx3535.

In the second phase, the jury determined that the D'877 patent was not invalid either on the basis of obviousness or lack of ornamentality. The jury also said that Sherman willfully infringed the D'877 Patent and fixed damages of $1.85 million. Appx3533-34.

Sherman moved for remittitur or a new trial on damages and JMOLs based on standing, validity, infringement, and willfulness. Appx13 FN. 6.  Dynamite moved for enhancement, attorney's fees and costs, interest, and a permanent injunction. Appx3751. The district court denied all post-trial motions except Dynamite's motion for attorney's fees and costs, interest, and a permanent injunction, which the court granted in part. Appx1.

Sherman filed the pending appeal, but Cooper did not appeal.

## SUMMARY OF THE ARGUMENT

The jury's verdict of willful infringement should be upheld because, as the district court stated, the objects "are exceedingly (and confusingly) similar," and the "defendants' principals admitted that the accused device infringed plaintiff's patent." The jury "quite reasonably found that the product infringed." Sherman took the patented design and its own witness admitted it.

The district court also properly ruled that "the jury's finding of willful infringement was based on substantial evidence of a pattern of bad conduct on the part of defendants, including its initial theft of plaintiff's patented design (which was, at a minimum, reckless), its failure to stop selling its inventory of pirated goods after receipt of a cease-and-desist letter and its utterly indefensible mock redesign process." Sherman's appeal ignores this evidence.

Sherman on appeal contends that there is overwhelming evidence of both obviousness and functionality. But Sherman never offered the prior art it relies on into evidence. Its appeal rests solely on the testimony of its expert, which the jury rejected and which gets no weight on appeal. Likewise, the D'877 patent is evidence of its own validity. Further, the jury heard that the orientation, arrangement, and appearance of the tools of the patented design could be otherwise arranged, including from Sherman's own expert when attempting an obviousness presentation.

Sherman expended substantial resources attempting to avoid liability for its admitted infringement by advancing a § 256 claim via Cooper. But Cooper, represented by independent counsel at trial, lost and did not appeal. Sherman never advanced a claim to an interest in the D'877 Patent and did not attempt to appeal on Cooper's behalf. As a result, inventorship is not properly before the Court.

The district court in any event ruled correctly on the inventorship question. Shlaferman testified he invented each design element of the D'877 patent and communicated the elements he wanted to Cooper. The district judge stated that "far from making a clear and convincing showing of inventorship, Cooper's contributions to the patented design could best be described as incidental."

The district court reasoned that it need not reach the issue of equitable estoppel against Cooper's newfound claim of co-inventorship, but that the same evidence adduced at trial that established Cooper's lack of inventorship would support estoppel. "Cooper's general knowledge of the patent process, his specific knowledge of Shlaferman's efforts to patent the Wallet Ninja design, his promises to respect Shlaferman's inventive ideas, his request to Shlaferman to use pictures of the Wallet Ninja on his company's website and his inexplicable silence about inventorship for years after the application for and issuance of the patent, equally support the jury's finding that Cooper was not a co-inventor …" After hearing all the evidence, the district court commented that Cooper's claim bordered on frivolity, and Cooper decided not to appeal.

The district court awarded damages fully substantiated by the evidence. Sherman agreed to charge the jury with a *Panduit* model for "but for" causation, and its expert applied the model. Sherman never identified an acceptable non-infringing alternative in the relevant market. Dynamite provided a damages expert,

and her expert reports were admitted without objection from Sherman. The reports and testimony detail evidence for each *Panduit* factor. The jury's award was less than the maximum reasonable under the evidence, showing the jury carefully considered the appropriate factors and made its own damages determination.

The district court awarded Dynamite fees and costs. The court found Sherman's approach to the case highly unreasonable, and that its conduct certainly justified attorneys' fees. In part, the district court found that Sherman unnecessarily multiplied the proceedings by bankrolling Cooper's inventorship claims. The district court succinctly found, "Moreover, defendants continued adoption of unreasonable positions … plainly, and unfairly, added unjustified layers of complexity and expense to the resolution of the case."

## ARGUMENT

## I.  STANDARDS OF REVIEW

### A. Denials of JMOLs, Remittitur and New Trial Motions

The Court of Appeals for the Second Circuit reviews the denial of a Rule 50(b) motion that follows a Rule 50(a) motion *de novo*. *See, Syntel Sterling Best Shores v. The Trizetto Group*, 68 F.4th 792, 800 (2nd Cir. 2023); *Legg v Ulster County*, 979 F. 3d 101, 114 (2nd Cir. 2020). The court considers the evidence in the light most favorable to the non-moving party and gives the benefit of all reasonable inferences that the jury might have drawn. *Id*. "A district court may

grant a motion for judgment as a matter of law only '[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Legg*, 979 F.3d at 114 (*citing*, Fed. R. Civ. P. 50(a)(1)).

The court may not make credibility determinations or weigh evidence and disregards evidence favorable to the moving party that the jury is not required to believe. *Id*. (*citing, Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 150-51 (2000)). A JMOL should not be granted unless the verdict could only have been the result of surmise or conjecture, or there is such an overwhelming amount of evidence in favor of the movant that a reasonable person could not have found against the movant. *See, Syntel Sterling Best Shores*, 68 F. 4th at 800.

When a party first raises an issue under Rule 50(b), the standard of review is highly deferential to the jury. In *SEB v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1371 (Fed. Cir. 2010), the Federal Circuit, applying Second Circuit law, stated that the Court must detect a "manifest injustice" before sustaining a Rule 50(b) motion that was made without first moving under Rule 50(a). *SEB*, 594 F.3d at 1371 (*citing, Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2nd Cir. 2005)).

This Court reviews a district court's decision to withhold a remittitur under the law of the regional circuit. *See, Revolution Eyewear, Inc. v. Aspex Eyewear,*

*Inc.*, 563 F.3d 1358, 1370 (Fed. Cir. 2009) (*citing, Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1148 (Fed. Cir. 2004). The Second Circuit reviews the denial of remittitur for an abuse of discretion. *See, Stampf v. Long Island R. Co.*, 761 F.3d 192, 202 (2nd Cir. 2014) (citation omitted).

The damages calculation is the province of the jury. *See, Ismail v. Cohen*, 889 F.2d 183, 186 (2nd Cir. 1990). A jury award on damages is not disturbed unless it exceeds a reasonable range. *Ismail*, 889 F.2d at 186. The ultimate question is whether the damages award shocks the judicial conscience. "When, as here, a trial judge refuses to disturb a jury's award of a particular amount of damages, the two entities entitled to deference–the judge and jury–point in the same direction." *See, Jennings v Yurkiw*, 18 F.4th 383, 389-90 (2nd Cir. 2021) (*citing, Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1329 (2nd Cir. 1990)).

Likewise, the denial of a new trial motion is reviewed under the law of the regional circuit. *Revolution Eyewear, Inc.*, 563 F.3d at 1370. In the Second Circuit, a district court's decision on a Rule 59 motion is reviewed for abuse of discretion. A district court may grant a new trial under Rule 59 if the jury has reached a seriously erroneous result or if the verdict is a miscarriage of justice. A new trial may also be awarded if substantial errors were made in admitting or excluding evidence. *See, Stampf*, 761 F.3d at 202.

14

### B. Use of a Jury on Inventorship

Sherman takes issue with the trial court's use of a jury for Cooper's inventorship trial. In the Second Circuit, objections to proposed jury instructions must be made under Federal Rule of Civil Procedure 51 prior to submission of the case to the jury to preserve a claim of error; otherwise, error is waived. *See, Jarvis v. Ford Motor Co.*, 283 F.3d 33, 60-62 (2nd Cir. 2002). The objection must distinctly state the matter objected to and the grounds of the objection so that the district court may consider the argument before submitting the case to the jury. *Id. See also, Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 542 (Fed. Cir. 1990) (applying Ninth Circuit law, the Court held that failure to object to submitting inequitable conduct to the jury precludes an appellate challenge).

Further, Federal Rule of Civil Procedure 39(c)(2) provides that in actions not triable by right to a jury, unless prohibited by statute, the court can order a jury trial with the consent of the parties. Sherman does not contend a statute prohibited a jury trial as to inventorship. In the Second Circuit, the failure to object to a jury trial indicates consent. *See, Broadnax*, 415 F.3d at 271 (2nd Cir. 2005).

### C. Evidentiary Rulings

The Second Circuit reviews a district court's evidentiary rulings for an abuse of discretion. *See, United States v. Litak*, 889 F.3d 56, 67 (2nd Cir. 2018); *United States v. Williams*, 506 F.3d 151, 159-160 (2nd Cir. 2007) (decision to admit

expert testimony under Federal Rule of Evid. 702 reviewed for an abuse of

discretion). To preserve error related to the exclusion of evidence, a party must

make an offer of proof as to the content of the excluded evidence, which must

inform the court of the substance of the testimony. *See, Henry v. Wyeth Pharms.,*

*Inc.,* 616 F.3d 134, 151-52 (2nd Cir. 2010); *see also Fed. R. Evid*. 103(a)(2). To

preserve error related to the admission of evidence, an objection must be made at

trial. Evidentiary rulings are upheld unless they are manifestly erroneous. *Litak*,

889 F.3d at 67 (*citing, United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015);

*Williams*, 506 F.3d at 159-160 (expert testimony). Even if an evidentiary ruling is

manifestly erroneous, the Second Circuit affirms if the error was harmless. *Litak*,

889 F.3d at 67.

### D. Harmless Error

Rule 61 of the Federal Rule of Civil Procedure provides that unless an error

affects a substantial right of the party, the error should be disregarded. In the

Second Circuit, a substantial right is not implicated if there is no likelihood that the

error or defect affected the outcome of the case as to the appealing party. *See, Lore*

*v. City of Syracuse*, 670 F.3d 127, 150 (2nd Cir. 2012) (*citing, Tesser v. Board of*

*Education,* 370 F.3d 314, 319 (2d Cir.2004)). An error is harmless if the reviewing

court can conclude with fair assurance that the jury's judgment was not

substantially swayed by the error or if the proof was unimportant in relation to

everything else in the record the jury considered. In a civil case in the Second

Circuit, the appellant must show an error is not harmless. *See, Tesser v. Board of*

*Educ. of City School Dist,* 370 F.3d 314, 319 (2nd Cir. 2004)*.*

### E. Enhanced Damages and Attorney Fees

When a court is assessing patent damages upon a finding for the plaintiff,

"the court may increase the damages up to three times the amount found or

assessed." 35 U.S.C. § 284.  "A district court's decision to award enhanced

damages upon a finding of willful infringement is reviewed for abuse of

discretion." *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244

(Fed. Cir. 2017).  Awards of enhanced damages are discretionary, and courts

should "take into account the particular circumstances of each case in deciding

whether to award damages, and in what amount." *Halo Elecs., Inc. v. Pulse Elecs.*,

Inc., 136 S. Ct. 1923, 1931 (2016).

"The court in exceptional cases may award reasonable attorney fees to the

prevailing party." 35 U.S.C. § 285.  To determine whether a patent infringement

case is exceptional under § 285, courts consider "the totality of the circumstances."

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

The district court's exceptional case determination and award of attorney fees

under 35 U.S.C. § 285 is reviewed for abuse of discretion. *See, Highmark Inc. v.*

*Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563-64 (2014); *In re PersonalWeb*

*Techs. LLC,* 85 F.4th 1148, 1153 (Fed. Cir. 2023).  "An abuse of discretion occurs when a district court's decision commits legal error or is based on a clearly erroneous assessment of the evidence." *Raniere v. Microsoft Corp.,* 887 F.3d 1298, 1303 (Fed. Cir. 2018).

## II.    THE COURT SHOULD REJECT SHERMAN'S STANDING ARGUMENT

Sherman contends that Dynamite lacks standing because Cooper should have prevailed on his § 256 claim. In Sherman's view, if Cooper had prevailed, the infringement case would have to be dismissed because Cooper was not a plaintiff. The jury found that Cooper failed to prove inventorship of the D'877 patent and the district court entered judgment for Dynamite.  Sherman, although it had no claim of its own at stake, asks the Court to reverse the judgment. Sherman did not appeal – of course, it has no right to appeal the judgment against Cooper, and has not argued that it stands in Cooper's shoes.  Without Cooper, appellate jurisdiction is lacking.

### A. Sherman Has No Right To Appeal the § 256 Judgment

Because Cooper–the only claimant on the § 256 claim–did not appeal the judgment, the Court lacks jurisdiction to review the judgment. *See, Marandola v. U.S.*, 518 F.3d 913, 914 (Fed. Cir. 2008) ("An untimely appeal must be dismissed for lack of jurisdiction"); *Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("the timely filing of a notice of appeal in a civil case is a jurisdictional requirement"). Sherman

cites no case or other authority explaining this Court's jurisdiction to disturb a judgment entered by a district court of competent jurisdiction against a § 256 claimant who elected not to appeal.

Sherman had no right or claim of its own adjudicated with respect to Cooper's § 256 claim, inventorship or ownership. It was not a claimant in the action between Cooper and Dynamite. While Sherman's JMOL argued that a decision in Cooper's favor would require dismissal of Dynamite's infringement action, Sherman presented no rights of its own for adjudication in Cooper's case, and never argued that its standing arguments should prevail without Cooper first prevailing on inventorship and ownership.

Sherman's lack of an appeal right is manifest in the relief it seeks. The Court, in Sherman's view, should reverse the judgment against Cooper and order a new bench only trial on Cooper's § 256 claim, although Cooper filed no appeal, has not asked for a new trial, and the judgment against Cooper is final. As for Sherman, it would have no claim in the new trial. Sherman cites no authority where this Court ordered such unusual relief.

### B. Sherman Failed to Object and Consented to the Jury

Even if the Court determines it has jurisdiction to reverse the judgment against Cooper, Sherman failed to preserve error on the issues it raises. Sherman contends the district court erroneously submitted the inventorship claim to the jury.

In the Second Circuit, objections to proposed jury instructions must be made under Rule 51 of the Federal Rules of Civil Procedure prior to submission of the case to the jury to preserve a claim of error; otherwise, error is waived. *See, Jarvis v. Ford Motor Co.*, 283 F.3d 33, 60-62 (2nd Cir. 2002). The objection must distinctly state the matter objected to and the grounds of the objection so that the district court has an opportunity to consider the argument before submitting the case to the jury. *Id*.

It is doubtful that Sherman had a legal basis to object to a jury trial with respect to Dynamite's and Cooper's § 256 case since it had no claim of its own. Presuming, however, that Sherman had a right to object, it was required to state its objection at the charge conference. Fed. R. Civ. P. Rule 51(c)(2) states, "An objection is timely if: (A) a party objects at the opportunity provided under Rule 51(b)(2); or B) a party was not informed of an instruction or action on a request before that opportunity to object, and the party objects promptly after learning that the instruction or request will be, or has been, given or refused." The district court held a charge conference, but Sherman did not object to the jury and neither did Cooper.

Sherman does not avoid waiver because it challenges the district court's use of a jury rather than challenging a specific instruction. Rule 51 is not so easily avoided. The "use of a jury" on any question is just the act of instructing the jury to consider a question or issue. The district court's use of the jury is embodied in its

instructions following the charge conference to consider the issue of Cooper's inventorship claim. Sherman stated no objection.

Like here, this Court in *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 542 (Fed. Cir. 1990) was asked to consider a challenge to a district court's use of a jury to consider the ultimate issue of inequitable conduct. Applying the Ninth Circuit's interpretation of Rule 51, the Court ruled that it would not - the appellant failed to preserve error because it failed to object to the jury instruction under Rule 51(c)(2). *See, Modine Mfg. Co.*, 917 F.2d at 542. The Second Circuit treats Rule 51 the same way. In *Jarvis v. Ford Motor Co*., the trial court charged inconsistent theories of liability, but the appellant did not object at the charge conference. The Second Circuit ruled that appellant failed to preserve error. *Jarvis*, 283 F.3d at 60-62.

Sherman argues that "at trial, the court also recognized Sherman's objection and lack of consent to submitting inventorship to the jury." OpeningBr. at 20 (citing, Appx4650-51). But the record Sherman cites does not show that it or Cooper objected to the jury. The cited portion of the record shows Cooper's counsel, not Sherman's, discussing whether the jury should be charged on Dynamite's claim that even if Cooper contributed to the invention, Cooper transferred those rights per this Court's decision in *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403 (Fed. Cir. 1996), *cert. denied*, 519 U.S. 1009

21

(1996).   The district court acknowledged Cooper's objection to this aspect of the

charge. The district court never acknowledged that Cooper or Sherman objected to

trying Cooper's § 256 claim to a jury because they made none.  Appx3482

Likewise, any previous requests for a bench trial do not preserve error for

appeal. 28 U.S.C. § 1291 does not grant jurisdiction to review interlocutory orders,

and, in any event, a notice of appeal must be filed within 30 days of the order

appealed from. *See, Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). The Court lacks

jurisdiction to review the district court's interlocutory orders, and only objections

at trial preserve error.

Further, the district court may use a jury on the question of inventorship if

the parties consent under Rule 39(c)(2). In the Second Circuit, in addition to failing

to preserve error, a lack of objection indicates consent to a jury under Rule

39(c)(2). *See, Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2nd Cir. 2005)

(failure to object indicated consent to a jury). Here, all the parties consented to a

jury trial on inventorship by not objecting at the charge conference.

In further indications of consent, the parties exchanged proposed jury

instructions on inventorship, and indicated inventorship as an issue to be tried on

proposed pre-trial orders. Appx2241. Sherman also indicated consent by writing to

the court about the organization and timing of the jury trial without objecting.

Appx1008; Appx2533; Appx2241.  Sherman, without preserving any objection,

requested an order of proof in its Motion in Limine No. 5 where Cooper's inventorship would be tried to the jury first. It argued that "determining inventorship first will be effective for determining the truth because it will give the jurors a clearer chronological picture of how the subject matter of the 877 Patent was developed". Appx1557

In a Summary Order in *Lexington Furniture Indus. v. The Lexington Co.*, No. 22-2993, at *4 (2d Cir., Dec. 26, 2023), the court found the failure to object and the submission of proposed jury instructions further indicated consent to a jury under Rule 39(c)(2). Sherman too never objected to the jury or advised the district court that inventorship could not be put to the jury. Sherman never cited *Shum v. Intel Corp.*, 499 F.3d 1272 (Fed. Cir. 2007) to the district court for any reason including to argue that a jury was inappropriate. Instead, Sherman proposed jury charges and proposed orders of proof in view of using a jury. Sherman, therefore, suffered no appealable error by the use of a jury.

## C. A Jury Was Appropriate Given Dynamite's Claims

The district court properly used a jury even under the standard Sherman asks this Court to apply. Sherman concedes "that a § 256 inventorship claim co-pending with another legal claim, for which 'commonality exists between the factual issues,' should be tried to a jury to determine the facts regarding inventorship as well as the other legal claim." OpeningBr. at 20. Sherman acknowledges that at

trial, Dynamite's ownership of the D'877 patent was a co-pending claim.

Dynamite's claim to ownership shared common facts with Cooper's claim to

inventorship; therefore, the district court was right to try the case to the jury.

The district court noted that even if Cooper could prove that he contributed

to the D'877 patent (which he could not), the district court understood Cooper may

have transferred his rights. Appx4559-60; Appx4477. This was a jury issue. The

Verdict Sheet contained two factual issues regarding ownership that the jury would

have reached had they not concluded that Cooper failed to prove that he made a

significant contribution to the D'877 patent. Appx3482. The commonality of

underlying facts between inventorship and ownership justified a single trial before

a jury.

### D. Using a Jury Was Harmless to Sherman

Sherman also fails to show that the alleged error on Cooper's § 256 claim

affected Sherman's substantial rights. In the Second Circuit, a party's substantial

right is not implicated if there is no likelihood the defect would have affected the

outcome of the case. *See, Lore*, 670 F.3d at 151. Here, Sherman had no claim or

right at stake in the outcome of the case. Sherman only wants to reverse the Cooper

judgment so it can avoid liability with a standing argument. The alleged error is

harmless as to Sherman.

24

### E.  Cooper Failed to Present Overwhelming Evidence of Inventorship

Sherman also ignores the deferential standard of review. To challenge a judgment based on the sufficiency of evidence in the Second Circuit, a party must first move before the case is given to the jury under Rule 50(a), and may renew the motion under Rule 50(b). Where, as here, a party fails to first move under Rule 50(a), the Court reviews the record for manifest injustice. *SEB*, 594 F.3d at 1371 (*citing, Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2nd Cir. 2005)). Justice requires that Sherman be held accountable for willful patent infringement. It suffers no injustice because its Cooper-based litigation strategy failed to get Sherman off the hook.

But even if the Court sees reason to review the Cooper judgment *de novo*, Sherman's arguments fail.  Shlaferman's testimony is given credit and Cooper's is not. *See, Syntel Sterling Best Shores v. The Trizetto Group*, 68 F.4th 792, 800 (2nd Cir. 2023); *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 150-51 (2000). Crediting the evidence favoring Dynamite, Shlaferman testified the design was conceived by him and not Cooper. Appx4339-Appx4348; Appx4351-57.  Shlaferman's hand drawing showed the overall design elements for the tool, corroborated his testimony, and was admitted into evidence.  Appx5725.  Cooper on the other hand offered no evidence the jury was required to accept.

Shlaferman also communicated his design elements and revisions to Cooper via phone, text and email. Many such communications were lost due to the passage of time.  Appx4352-53.  A reasonable jury could have concluded that Shlaferman imparted his invention to Cooper in drawings, video conferences, phone conferences, text message, emails and conversations that, due to the passage of time, are lost. Without the complete record, the jury could have concluded that it was impossible to corroborate Cooper's version of what happened 10 years ago.

Shlaferman also testified that Dynamite's patent attorney was fully aware of Cooper's work on the Wallet Ninja but named only Shlaferman as an inventor on the D'877 Patent application. Appx4371-73.  A reasonable jury could have concluded that the patent attorney had the best vantage point, the best contemporaneous evidence, and the best motivation for correctly naming the inventors.

Cooper's conduct further indicates that the jury was correct to reject his testimony. At the time of his supposed contribution, he said nothing about being a co-inventor to the patent attorney or Shlaferman. He acted at all times like Shlaferman was the sole inventor, including by asking Shlaferman's permission to use aspects of the project in advertising. Appx4612.

The jury also had reason to reject Cooper's testimony about the mechanical functioning of the Wallet Ninja since it conflicted with Sherman's expert's

testimony. Cooper claimed the arrangement with the largest hex size in the middle was mechanically required. Appx4454. Sherman's expert, on the other hand, said placing the largest hex on the left was a mechanical advantage. Appx5191-2

Against this substantial weight favoring the jury's verdict, Sherman relies on inferences to be drawn from Defendant's Exhibits D123-125, draft declarations exchanged during settlement discussions. Appx4508-09. A reasonable jury could have concluded that the late, unsigned documents, introduced by Cooper were ambiguous, unconvincing, litigation driven and too far removed from the events of 10 years ago to be of any value at all. Therefore, even if the Court undertakes a *de novo* review for Sherman, the jury had ample evidence to find for Dynamite and the jury's verdict on inventorship should not be disturbed.

Sherman's standing argument is a non-starter if the Court determines Cooper's judgment is not reviewable or otherwise affirms the judgment. But Sherman is also wrong that the Court should mandate dismissal of Dynamite's infringement claim if the Court disturbs the judgment against Cooper. The district court would still need to determine the remaining jury questions, including if Dynamite possessed all of Cooper's rights pursuant to *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403 (Fed. Cir. 1996), *cert. denied*, 519 U.S. 1009 (1996). The district court also declined to reach estoppel because the jury ruled against Cooper, but noted that the same considerations supported the verdict. If the Court

disturbs the Cooper judgment, the district court needs to consider estoppel under *MCV Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568 (Fed. Cir. 1989).

Also, contrary to Sherman's contention, correcting inventors under § 256 does not negate standing, although it may raise whether the added inventor must be joined as an owner. *See, Ethicon, Inc. v. U.S. Surgical Corp*., 135 F.3d 1456, 1466-1468 (Fed. Cir. 1998). Here, even if Cooper had prevailed on his Sherman sponsored § 256 claim, he was never--and would never be--an owner.

## III.    THERE IS SUFFICIENT EVIDENCE OF INFRINGEMENT

The district court received ample evidence of infringement, and the jury's verdict was not the product of surmise or mere conjecture. *See, Syntel Sterling Best Shores*, 68 F. 4th at 800. The district court received into evidence P1, the D'877 patent (Appx5659), and Sherman's catalogs D173 and D174 (Appx5672 and Appx6033), which are photographs of the infringing TOL4 products. As shown below, Sherman's first TOL4 is a duplicate of Dynamite's patented design.





Appx5660                                    Appx6033

This alone is sufficient evidence of infringement. Additional evidence was

received at trial. Robert Davila, Sherman's Director of Merchandising, sent three

photos of Dynamite's product to three vendors in China. He asked for quotes to

have it copied and manufactured for Sherman to sell as its TOL4 product.

Appx5078-9; Appx5949-54.  Davila looked at a blow-up poster board of the TOL4

product on an easel in front of the jury and admitted the TOL4 infringed

Dynamite's patent. Appx5079-80.  Davila testified that Sherman, after knowing of

the infringement, continued to sell the infringing product even after he directed his team to stop selling it. Appx5081.

After receiving a cease-and-desist letter, (Appx5903), Sherman "redesigned" the product—without making any meaningful changes (Appx4)—and sold it under the same part number, without telling its customers of any change to the product. Appx5081.  The district court received the second TOL4 into evidence as P5:



Appx5672. The differences are so insubstantial that the district court called it a "faux redesign." Appx12.

No Sherman customer noticed a difference between the admittedly infringing TOL4 and Sherman's TOL4 "faux redesign." Appx5082.  Davila testified that Sherman sold 770,000 TOL4 products. Appx5083. Sherman introduced no evidence quantifying which of those sales were the admittedly infringing TOL4 and which were the slightly modified versions.

Sherman's non-infringement expert also called the two products "pretty

identical" on redirect examination:

> REDIRECT EXAMINATION - BY MR. DONOHUE:
> Q. Dr. Formosa, are you aware of whether Sherman had two different
> versions of the TOL4?
> A. Yes.
> Q. And think about -- and are you familiar with the differences between
> those two?
> A. They were pretty identical.

Appx5202.

Dynamite's expert, Professor Rake, also provided evidence of infringement.

(Sherman never objected to the admission of Rake's infringement testimony at trial

and any critique of his methods or use of gestalt principles should be disregarded.)

Rake testified that the overall form of the accused products and the patent were

similar. Appx4853; Appx4864. Sherman's expert, Formosa, without using gestalt

principles, testified similarly to Rake on this point. Appx5202. There was,

therefore, sufficient if not overwhelming evidence that the first and second

versions of the TOL4 infringed and that all the sales were of the admittedly

infringing TOL4.

In view of this overwhelming infringement evidence, Sherman's argument

that the exclusion of Davila's testimony as an expert "provides another reason for

the Court to overturn the Judgment and order a new trial" (OpeningBr., p. 31) is

without merit. Sherman never made an offer of proof as to what Davila's expert

testimony would have been and how it would have impacted the other witnesses.  Further, Formosa was not precluded from testifying about the ordinary observer, and there is otherwise overwhelming evidence of infringement. Sherman makes no effort to show how the Davila testimony would have changed the outcome on infringement. Therefore, the purported error that Sherman failed to preserve is harmless.

As the district court found, its exclusion of Davila's testimony on the ordinary observer was appropriate, and Sherman "presented nothing to suggest that they were, in any manner, prejudiced by the determination." Appx13. The district court also noted and that Sherman waived its right to complain about that decision by not bringing any authority to the Court when it was requested.  Appx13. The district court was well within its discretion to deny Sherman's new trial motion. This Court should affirm that decision.

## IV.    SHERMAN FAILED TO PROVE FUNCTIONALITY WITH OVERWHELMING EVIDENCE

Sherman did not show the D'877 was solely functional, and the district court properly denied its JMOL. The D'877 patent is evidence of its own non-functionality. A reasonable juror could perceive that the tool selection and tool layout could have been otherwise, such as by selecting a shape other than the rectangular credit-card shape of the patented design. This evidence alone sustains the jury's verdict.

There was additional evidence of design. Shlaferman's testimony regarding his invention and his evolution of the design further supports the verdict. Shlaferman also engaged a patent attorney who determined that a design patent application was appropriate and who prepared the application. Professor Rake explained the design elements of the patented design. The Patent Office determined that a design patent should issue.

Sherman provided evidence of design as well. It mentioned the Pocket Monkey and other multitools at trial. The existence of other multitools with similar functions shows that the patented design is not primarily functional. *See, L.A. Gear, Inc. v. Thom Mcan Shoe Co*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("[w]hen there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."). The ornamental design is the organization of those tools in a way that appeals to consumers. *Id*.

Sherman's appeal relies on, Dr. Formosa. While Formosa's testimony gets no weight, his testimony if accepted would not sustain a finding of functionality.  He testified only that the tool was very functional or very utilitarian without considering the design aspects of the patent claim.

> Looking at this from a wide-angle view, looking at the entire unit, it's very utilitarian. Looking at each element it's also very utilitarian. So that's when -- you know, my opinion is that this is a very functional utilitarian object.

Appx5165. "Very functional" and "very utilitarian" are not the tests for

invalidity for lack of ornamental design. On cross-examination, Formosa conceded

that, under his "very functional" test, he did not understand why other design

patents for multitools issued. Appx5196-97.

The law disallows evaluating each feature of a patented design piecemeal for

functionality, as Dr. Formosa did. On the other hand, Dr. Formosa never opined

that the overall appearance of the D'877 Patent, including the selection and

location of each tool, was dictated by function. Even with Formosa's evidence

considered, Sherman failed to present overwhelming evidence that the design was

primarily functional, and the district court properly denied Sherman's JMOL.

## V.    SHERMAN FAILED TO PROVE OBVIOUSNESS WITH OVERWHELMING EVIDENCE

### A. Sherman Offered No Prior Art References at Trial

The Court should affirm the district court's judgment rejecting Sherman's

obviousness defense. Obviousness is a legal question with underlying factual

inquiries. *See, Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir.

2015). The factual inquiries include what the prior art is, what it discloses, and

whether a person of ordinary skill in the art would have been motivated to combine

the references. *Id.*

Because Sherman did not offer any prior art references into evidence at trial

Sherman's appeal on the underlying factual questions rests entirely on the

testimony of Formosa. While Formosa testified regarding a demonstrative exhibit

(Appx5156), Sherman never introduced the purported references shown on the

demonstrative and the demonstrative itself was not received into evidence.

Sherman's citations to references not received into evidence are unexplained. See

OpeningBr. page 6 with regard to patents D603,230 and D707,091, and page 47

with regard to all other alleged prior art.  A picture of a Pocket Monkey product was

admitted into evidence as D17 during the first phase of the trial on ownership and

inventorship, but that photo was never referenced by Formosa and not shown on his

demonstrative and there was no evidence offered on when the product in that photo

was manufactured and if it was prior art.  Similarly, Sherman's citations to Kim

Schenk's damages reports are inappropriate as she mentioned the art but did not

include it in her reports.  Sherman's lack of prior art admitted into evidence for this

Court to consider is dispositive of the issue on appeal.

### B. Under either the *Rosen* and *Durling* or *LKQ* tests, Sherman Failed to show obviousness.

Formosa's testimony did not make a case for obviousness. Formosa's entire

obviousness testimony is only a few pages, and is the only evidence Sherman has

to support its appeal.  Appx5182- Appx5187.  Formosa testified that since he was

able to find each of the tools on D'877 patent in another tool, the D'877 must be

obvious. Appx5185. For example, Formosa found "a MAG Knife that is a box cutter blade... that looks very much like the curve on the D'877 patent." *Id.* Sherman offered no evidence that the blade was prior art or any explanation for why a designer would combine it with other tools he identified to create the D'877 patent.

Formosa's hindsight testimony pointing out that the tools that were included and arranged in the D'877 existed as individual tools does not invalidate the D'877 patent, under either the *Rosen* and *Durling* or *LKQ* tests for obviousness. *Application of Glavas*, 230 F.2d 447, 450 (C.C.P.A. 1956) ("Obviously, almost every new design is made up of elements which, individually, are old somewhere in the prior art, but the fact that the individual elements of a design are old, does not prove want of invention in assembling them.").

Formosa's alleged primary reference, which was not introduced into evidence, is not visually similar to the design claimed in the D'877 patent. The '230 patent figure differs substantially from the D'877 patent claim. Three sides of the '230 patent graphic are completely different, and the fourth side, the one with the wrenches, differs significantly in size and spacing.

Sherman also lacks any "record-supported reason (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create

the same overall appearance as the claimed design." *See, LKQ Corp. v. GM Glob. Tech. Operations*, No. 2021-2348, at *26 (Fed. Cir. May 21, 2024).

Formosa never attempts to explain why someone of ordinary skill would take four different tools and combine those particular tools, in the exact shape and design as the claimed design in the D'877 Patent. Appx5182-3. Formosa adds specific tools to the tool of the '230 patent graphic, without regard to overall appearance. Even if it were proper to combine these references, doing so would not result in the claimed design of the D'877 patent without hindsight.

As the district court noted, "While defense counsel relies exclusively upon its expert's opinion to suggest that the patent design was obvious when compared to the prior art, and therefore invalid, there was sufficient reason to question these opinions, as well as other evidence of record, that amply supports the jury's determination." Appx14-15. This Court should affirm.

## C. Dynamite presented substantial evidence of non-obviousness

The district court also received ample evidence of commercial success, industry praise and copying of the D'877 patent, demonstrating non-obviousness of the D'877 patent. See, *LKQ Corp. v. GM Glob. Tech. Operations, No. 2021-2348, at *27 (Fed. Cir. May 21, 2024)*.   The "Wallet Ninja enjoyed remarkable market success, being distributed through major retailers and obtaining significant rankings on Amazon.com." Appx3.  *See also* Appx4879-90, Appx4390, and

Appx4882. Sherman's infringing product became its most successful product ever in its tool category. Appx5083. Sherman used the infringing design to promote its own business. Appx5084.

The jury could have reasonably concluded that the commercial success resulted from the patented design since both Dynamite and Sherman attempted other designs that were not successful.  Specifically, when Sherman attempted its own credit card sized multitool with a non-infringing design, the "no touch multitool," it failed. Appx4778.  Shlaferman also testified that customer appreciation of the design drove commercial success. Appx4879-4883. Bronson testified as to the attributes that made the design a commercial success in the promotional goods market, including its commercial success in the retail markets. Appx4732-34.  The success of the Wallet Ninja was also recognized by the press.  Appx4879-90; Appx3637; Appx4887.

Dynamite also submitted unrefuted evidence of copying as Sherman admitted it developed the infringing product by sending photos of the Wallet Ninja to overseas manufacturers to have it copied. Appx3-4; Appx4888. The ample evidence of the objective indicia of non-obviousness is further reason to reject Sherman's obviousness defense.

## VI.   SUBSTANTIAL, PROPERLY ADMITTED, EVIDENCE SUPPORTS THE DAMAGES VERDICT

Sherman contends that there was insufficient evidence to support a finding on all the *Panduit* factors, and that the district based its award on the inadmissible testimony of Dynamite's damages expert, Ms. Kimberly Schenk. The district court found no error in admitting Schenk's testimony and found that "the evidence amply supports the jury's considered determination of damages, and defendants have failed to satisfy the demanding standard for post-trial relief." Appx13.

### A. The Court Properly Admitted Schenk's Testimony

Sherman contends that the district court should have excluded Schenk from testifying. Schenk opined on Dynamite's damages, including lost profits. Shenk meticulously analyzed the *Panduit* factors in her opening and reply reports Appx6405-Appx6553; Appx6554-6606. The factual underpinnings of her opinions were well documented and supported by hundreds of pages of evidence collected in her reports, all of which were admitted without objection. Appx5020-2.

The district court made no definitive ruling on Sherman's *in limine* motion to  Schenk's opening report and testimony prior to trial. Sherman never moved with regard to her reply report.  The district court considered Sherman's objection to Shenk's testimony at trial, ruled that Schenk was a qualified expert and ruled that Sherman's objections went to weight and not admissibility. Appx4783.

The district court's ruling was not an abuse of discretion. There was no dispute that Schenk was a qualified expert. There was also no dispute that applying the *Panduit* factors to evaluate lost profits was an acceptable and approved methodology applicable to this case.  Sherman's expert, Eisgruber, applied the same methodology.  Appx5210-11. Sherman proposed and agreed to a *Panduit* charge. Appx2315; Appx5302.

Sherman's counsel also opened the door for the Schenk testimony by telling the jury Schenk's opinions, and attacking them, in Sherman's opening statement. Appx4710-15. *See, e.g., United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1991); *Lloyd v. Morton*, 18-CV-6979 (WFK), at *10 (E.D.N.Y. Feb. 14, 2023) (opening statements can open the door to admission of other evidence).  The district court therefore correctly allowed her to testify.

Furthermore, Sherman ignores that any alleged error concerning Schenk's testimony is harmless, because Schenk's Opening and Rebuttal Reports were admitted without objection. Error is only reversible if the error would have made a difference in the outcome of the matter. Here, Schenk's entire lost profit analysis and reply to Dynamite's experts, including her consideration of non-infringing alternatives and her consideration of other experts' opinions are set forth in her reports as admitted exhibits D219 and D220.  Appx6405; Appx6554.

Sherman's contention that during trial Sherman renewed its objection to the admission of Schenk's reports (OpeningBr. 47) stands in sharp contrast to the transcript.

> MR. MCGEARY: Your Honor, we'd like to introduce Exhibits D 219
> [Schenk Opening Report] and D 220 [Schenk Reply Report].
> MR. BERLOWITZ: No objection.
> THE COURT: Any objection?
> MR. BERLOWITZ: No objection.
> THE COURT: They are admitted.

Appx5020-2. Sherman made no objections during Schenk's testimony either. Appx5021-23. Sherman's failure to object to the reports renders any error in permitting Schenck to testify harmless error, and Sherman ignores its burden to show harm.

Sherman's attack on Schenk also lacks substantive merit; so, there is no error.  Sherman states Schenk did not do her own search for acceptable non-infringing alternatives. Schenk inquired of others with knowledge in the industry about the existence of acceptable non-infringing alternatives. Schenk explained at trial and in her reports that she analyzed whether non-infringing alternatives were acceptable based on underlying facts that were reported to her by Dynamite's other witnesses, who also testified at trial.  Appx4985-Appx4992.  *See, Micro Chemical, Inc. v. Lextron, Inc.,* 317 F.3d 1387 (Fed. Cir. 2003) (relying on other witnesses and experts for factual issues is not inappropriate).

Further, Schenk considered every product brought to her attention as a potential acceptable non-infringing alternative. In her Reply Report–which Sherman did not include in its *in limine* motion or object to at trial–Schenk considered each multitool Sherman's expert identified even though neither Sherman nor its expert asserted they were acceptable non-infringing alternatives.

Sherman cites *EZ Dock, Inc. v. Schafer Systems, Inc.*, Civil No. 98-2364 (RHK/AJB) (D. Minn. Mar. 8, 2003), where a damages expert was excluded because the expert report had no facts underlying his proposed testimony regarding demand for the patented product or the availability of acceptable non-infringing alternatives. In addition to being an unpublished, non-binding, Minnesota district court case, *EZ Dock* is inapposite. Unlike the expert in *EZ Dock*, Ms. Schenk explained in her testimony and reports the facts underlying her *Panduit* analysis. These facts included Sherman's inability to either locate or design an acceptable non-infringing alternative, although it tried to do so.

Also, unlike in *EZ Doc*k, Sherman examined Schenk on the availability of acceptable non-infringing alternatives. Sherman also cross-examined each of the witnesses Schenk relied on. The district court noted that whether these witnesses recalled their conversations with Schenk was not relevant given the entirely consistent testimony they gave on the same subject at trial. Appx4763-64.

Schenk also testified that she did not 'regurgitate' the opinion of any other expert. Instead, she asked the questions necessary for her to investigate the underlying facts so that she could come to her own conclusions. Appx3651-Appx3665. One expert is permitted to rely on facts, opinions, and data not of the expert's own making—including analyses performed or findings made by another expert in the case—even if those facts, opinions, and data are otherwise inadmissible. *See, U.S. Bank National Ass'n v. PHL Variable Life Insurance*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015). In this case, the other facts and opinions were admissible and received as evidence at trial.

The district court carefully considered whether Schenk's testimony was the product of reliable analysis before allowing her to offer all of her opinions and even conducted its own examination of Schenk outside the jury's presence. Appx4957-4966. The court concluded that Schenk's testimony was admissible, and the court's ruling was not an abuse of discretion. Schenk's testimony and her reports were, therefore, properly before the jury, and this Court credits this evidence and reasonable inferences on its review of the damages verdict.

## B. There Was Sufficient Evidence on the Absence of Acceptable Non-infringing Alternatives to Support the Jury Verdict

Sherman argues there was insufficient evidence of the absence of acceptable non-infringing alternatives to sustain the jury's verdict. The Court reviews the evidence supporting the jury's verdict in the light most favorable to

Dynamite, and all inferences are drawn in Dynamite's favor. *See, Syntel Sterling Best Shores v. The Trizetto Group,* 68 F.4th 792, 800 (2nd Cir. 2023). The Court disregards any evidence the jury was not required to accept. *Id*.

Schenk considered numerous potential substitutes in her Opening Report. On redirect, she testified that the potential substitutes she considered were identified at pages 19 of her Opening Report and Paragraph 14 of her Reply report. Appx5021-22. Although Sherman's expert did not testify that such products would qualify as acceptable non-infringing alternatives, Schenk considered each of them and concluded they were not acceptable non-infringing alternatives and explained her rationale. *Id*.

Schenk considered more than individual products to conclude an absence of acceptable non-infringing alternatives. Schenk considered, and the jury had before it, evidence that Sherman tried repeatedly, without success, to sell its "No Touch Multitool" as a cheaper replacement to customers attempting to order the infringing TOL4 product. Appx6415; Appx656. The product failed, indicating to Schenk and to the jury that Sherman was unable to either procure or design an acceptable non-infringing alternative. *See, Depuy Spine, Inc. v. Medtronic Sofamor Danek*, 567 F.3d 1314, 1332 (Fed. Cir. 2009).

On appeal, Sherman identifies two non-infringing products that it criticizes Schenk for allegedly disregarding, namely, the "Pocket Monkey" and the "Wallet

Ninja Pro." But Schenk addressed both products in her reports. Appx6559-

Appx6561. Sherman's criticism of Ms. Schenk with regard to acceptable non-

infringing alternatives is not that she failed to consider them, it is that Sherman

disagrees with her conclusions. That is a jury issue. *See, Micro Chemical, Inc. v.*

*Lextron, Inc*., 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties'

experts rely on conflicting sets of facts, it is not the role of the trial court to

evaluate the correctness of facts underlying one expert's testimony.").

Sherman, furthermore, made no mention of the "Wallet Ninja Pro" at trial or

in the JMOL motions; so, Sherman failed to preserve that argument for

appeal.  The only evidence of the "Wallet Ninja Pro" before the jury was in the

paragraphs of the Schenk reports explaining why it was not an acceptable non-

infringing alternative.

Sherman also had no evidence of an acceptable non-infringing alternative at

trial, despite searching for alternatives. *See, Fiskars, Inc. v. Hunt Mfg. Co*., 279

F.3d 1378, 1383 (Fed. Cir. 2002) ("[Defendant] could have offered at trial what it

considered to be its best evidence that [Plaintiff] was not entitled to lost profits,

including the existence of any acceptable non-infringing alternatives. We see no

reason why [Defendant] should be entitled to a second opportunity to present its

case.") (internal citations omitted).

Eisgruber's testimony on non-infringing alternatives is limited to proving he searched for multitools on Google and found some. But Eisgruber never contended any of them would be an *acceptable*, non-infringing alternative:

> Q. Did you run a Google search?
> A. I did.
> Q. Did you see other multitool products?
> A. Yes, I did.

Appx5212. Eisgruber's search for other multitools without offering an acceptable non-infringing alternative leaves the jury to infer that he did not find any because none existed.

Sherman's argument that there are many multitools proves little (or nothing) favorable to Sherman that the jury was required to accept. "Mere existence of a competing device does not make that device an acceptable substitute." *See, TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986).

Sherman's own behavior was substantial evidence of the lack of an acceptable non-infringing alternative. As the district court stated, "Thus, defendants' behavior demonstrates that the vein of consumer demand into which they tapped—ultimately selling approximately 800,000 infringing units—required a product with the patented features, and therefore, would not be satisfied with a non-infringing alternative." Appx12. The district court correctly denied Sherman's

JMOL, finding there was ample evidence to support the jury's verdict on the

absence of acceptable non-infringing alternatives

> Thus, the evidence supports a determination by the jury that there were no non-infringing alternatives or that plaintiff otherwise established lost sales. In a case such as this one, involving a low-cost, impulse-buy consumer item, the jury's determination in this regard should be afforded particular weight.

Appx13

### C. There Is Sufficient Evidence on the Demand for the Patented Product to Support the Jury's Verdict

Sherman also contends that there was insufficient evidence of demand. In a

*Panduit* analysis, "[t]he proper inquiry asks whether demand existed in the

marketplace for the patented product, i.e., a product 'covered by the patent in suit

or that directly competes with the infringing device.'" *See, Georgetown Rail*

*Equipment Co. v. Holland LP*, 867 F.3d 1229, 1241 (Fed. Cir. 2017) (*citing*,

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1330 (Fed.

Cir. 2009) (internal quotation marks and citation omitted)). This Court has found

that patentee's sales of covered products satisfy the demand factor. *Id*. at 1241.

Dynamite presented ample evidence of demand for the patented product.

Shlaferman testified extensively concerning the demand and success of the Wallet

Ninja product, which embodies the patented design. The product sold in retail and

in promotional goods channels and evidence of Dynamite's sales of 2.7 million

Wallet Ninjas was admitted into evidence. Appx6420. Sherman's sales of 800,000

units in the promotional goods market also demonstrated demand for the product.

It was Sherman's all-time best-selling tool. This evidence by itself satisfies Panduit

Factor-1.

Further, Bronson testified concerning the desirable aspects of the patented

design in the promotional goods market, where both Sherman and Dynamite

competed. He explained the importance of promotional goods in marketing and the

factors considered in selecting a promotional product. For example, the patented

product design of a multitool provided both space for including promotional

graphics, an aesthetic appeal and was designed to be carried by the recipient. This

resulted in the opportunity for multiple touches by the customer. Appx4720-37.

Schenk testified extensively about Panduit factor 1 (demand) regarding both

the quantitative and qualitative analyses she performed to reach her conclusions.

Appx4934-37. The Schenk Opening Report was received in evidence and has a

long section on Panduit factor 1 - Demand for the Patented Product. Appx6419-

23.  The Report analyzes Dynamite's sales and commercial success, traditional and

digital media coverage of the patented Wallet Ninja, the evolution of the Wallet

Ninja into the promotional goods market, the product's many favorable customer

reviews, Sherman's decision to sell the infringing products, and Sherman's success

with the infringing product. Relying on Davila, Schenk notes the infringing

product became Sherman's all-time best seller in the tool category. *Id*.

Further, Sherman's damages expert, Mr. Eisgruber, agreed that Dynamite

established Panduit factor 1. When asked why he held the opinion that Dynamite

failed to prove lost profits, Eisgruber conceded Dynamite established demand:

> Q. Let's start with the first opinion that Dynamite has not proven lost
> profits. Why do you hold that opinion?
> A. So Ms. Schenk used a four-factor test in determining if there was
> lost profits and the four factors are on the screen but, again -- they are
>> [1] demand for the patented product,
>> [2] absence of acceptable noninfringing substitutes,
>> [3] manufacturing and marketing capacity and then
>> [4] the quantification of lost profits.
> [Court instruction to the jury about expert testimony and the law]
> BY MR. BERLOWITZ:
> Q. Were you finished with your answer?
> A. I was saying in my opinion Ms. Schenk has not met three of these
> criteria.
> Q. Which three of the criteria has she not met?
> A. It would be number two, three, and four.

Appx5210-11.

Sherman's argument on demand ignores its obligation to show that "there is

such a complete absence of evidence supporting the verdict that the jury's findings

could only have been the result of sheer surmise and conjecture" *See, Galdieri-

Ambrosini,* 136 F.3d 276, 289 (2d Cir. 1998). The jury here received ample

documentary and testimonial evidence, including from Sherman's expert, on demand for the patented product.

Sherman mistakes what the demand factor requires. Relying on the so-called 19th century *Carpet Cases*, Sherman argues that Dynamite must show that demand for the patented product is driven by the patented feature. While Dynamite amply demonstrated that the patented design drove demand, this is not a requirement of Panduit factor 1. As this Court stated in in *Georgetown Rail Equipment Co*., all that is required is to show demand for a covered product. *See, Georgetown Rail Equipment Co.,* 867 F.3d at 1241. While demand for the patented feature may be relevant if the infringer asserts a particular product as an available and acceptable non-infringing alternative, the inquiry is not relevant to Panduit Factor 1.

In addressing demand, Sherman makes evidentiary criticisms of Dynamite's damages evidence that ignore the trial record. Sherman calls Schenk's conclusion that Dynamite would have made Sherman's infringing sales an unfounded conclusion, speculative and relying entirely on the supposed unsupported opinion from Bronson. As an evidentiary matter, Sherman failed to object to Dynamite's offer of Bronson as an expert, and the portions of Bronson's testimony it complains about here. So, Bronson's testimony was properly admitted and Schenk could rely on it.

But Sherman also ignores that it is the presence of all the Panduit factors that permitted Schenk and the jury to conclude that Dynamite would have made Sherman's sales but for the infringement. *See, Georgetown Rail Equipment Co.,* 867 F.3d at 1241. Sherman proposed and agreed to the *Panduit* charge. Appx2315; Appx5302. Its time to complain that a Panduit charge was inappropriate was at trial. Schenk's conclusion based on the Panduit test is not speculation. Sherman cannot agree that the jury should decide lost profits pursuant to *Panduit* and then claim the district court erred in determining but for causation using the *Panduit* test.

Sherman further contends that Dynamite's request of $ 1.9M in damages on $2.8M in sales demonstrates a profit margin so high that the Court ought to conclude that Schenk's testimony was not credible. But Sherman never objected to Schenk's proposed analysis on the basis of Dynamite's profit margin and never mentioned "profit margin" at trial. Sherman never alleged that Schenk's calculations yielded an artificially high profit margin or that the industry margin was significantly lower. Had it done so, the jury and district court could have evaluated that evidence, and the record would reflect an evidentiary basis for determining if the damages awarded by the jury were high. Since these grounds were never raised at trial, they are not grounds for appeal.

Sherman also overstates the import of *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1167 (Fed. Cir. 1991), which concerned infringement of diagnostic tools. The Court in that case reviewed a bench trial decision and determined that the finding that SmithKline failed to prove a 50% profit margin was not clearly erroneous. The Court in *SmithKline Diagnostics, Inc*. did not include its analysis of the profit margin in that case; therefore, the case lacks a holding or dicta that could be helpful to Sherman on the facts here.

The Federal Circuit also decided *SmithKline* before the world wide web and even before complete normalization of trade relations with China. Perhaps if SmithKline could have had its patented product manufactured in China, marketed on the world wide web, and shipped low cost to the United States, its profit margins would not have been so troublesome to the court. In any event, Dynamite submitted evidence of its marketing, manufacturing and costs. Likewise, Sherman simply ordered its infringing products from China, and, since it copied Dynamite's design, it had no research costs either. Unsurprisingly, Sherman chose to not approach "profit margin" at trial, presumably, because its own profit margins likely were comparable or even higher.

Sherman also contends there was insufficient evidence that Sherman's customers would pay more than what Sherman charged for the infringing product, although this is irrelevant to the *Panduit* "demand" factor. Rather than attempt to

connect this argument to demand or another *Panduit* factor, Sherman cites *Bic Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214 (Fed. Cir. 1993) for the abstract proposition that a wide price disparity "weighs in Sherman's favor in the Panduit analysis." OpeningBr. at 55.

The Court should disregard Sherman's reliance on *Bic Leisure* because the case is inapposite. In *Bic Leisure*, this Court reviewed a damages case tried to the bench. The case concerned a utility patent. The infringer argued that the patent holder was not entitled to lost profits because, among other reasons, there were ample acceptable non-infringing alternatives in the market and the infringing and patented product differed substantially. The Court determined that while *Panduit* provided one way of determining "but for" causation, the district court should not have used *Panduit* in the particular market conditions of that case. *Id*. at 1218. The Court agreed that *Panduit* adequately accounted for lost profits where, like here, the patentee and the infringer sell products sufficiently similar to compete against each other in the same market. But if the products are not sufficiently similar in the market, the Court reasoned, then the *Panduit* test is not a fit for a lost profits analysis. *Id*. at 1218-1219

Here, Sherman agreed to charge the jury with *Panduit*, thereby waiving any objection to the proper test for lost profits. Sherman never cited *Bic Leisure* to the district court either at the charge conference or in its JMOLs. Sherman failed to

preserve a right to argue that the district court should have used a different test for "but for" causation.

Further, the factual record is much different here. Unlike the infringer in *Bic Leisure*, who sold a fundamentally different product, Sherman copied the infringing TOL4 from Dynamite's product. Where acceptable non-infringing alternatives were indisputably available in *Bic Leisure*, none were available here. The *Bic Leisure* case concerned recreational consumers with a defined beginner market where several manufacturers were competing on price. This case involves sophisticated businesses buying goods to promote their brands where price is not a particularly strong factor in selecting a promotion vehicle. Appx4723-27.

Further, in absolute terms, the price disparity Sherman relies on is a tiny fraction of the price disparity that concerned the Court in *Bic Leisure*. Between 1983 and 1985, $300 likely represented substantial take home pay for an entry level sailboarder. In 2021, $3 bought a medium coffee. If Sherman had objected to a *Panduit* charge, it had very little evidence to convince the district court the jury could not be charged on *Panduit*.

Also, to the extent Sherman argued price disparity, Dynamite challenged the factual underpinnings of those assertions to the jury. Schenk testified that she disagreed with Sherman's numbers and explained in detail how she made her

calculations on price difference. Appx4949-54. The jury and court rejected

Sherman's factual contentions and accepted Dynamite's.

Dynamite also presented, and Schenk considered, ample evidence of the lack

of price sensitivity in the promotional goods market and that promotional goods

customers were willing to pay higher prices than Sherman's:

- evidence customers were willing to pay higher prices (Appx4951);

- evidence price is not the determining factor when choosing promotional

  products (Appx4725-28);

- evidence customers in the promotional market are willing to pay five to six

  times the original price when a knock off product is removed from the

  market (Appx4732);

- evidence that customers would pay four to five times Sherman's price for

  Dynamite's product (Appx4734-39);

- evidence customers in the promotional market would pay from $3-$10 for

  products with the patented design (Appx4881-82); and

- evidence that after the infringing product was removed from the market,

  Dynamite's customers paid higher prices (Appx4902-03).

Contrary to Sherman's arguments, Schenk also accounted for price disparity

in calculating damages. Schenk considered the prices at which Sherman or

Dynamite sold the covered product in the promotional or consumer market. The

jury heard and saw damages calculations falling into the price ranges charged in the promotional market. Based on the testimony the jury heard concerning the value of the product to the buyers in the promotional market and the prices Dynamite charged before and after infringement, the jury had ample evidence to calculate the appropriate price to calculate damages, and its award fell within the range of damages Schenk's methodology supported.

A patentee may provide an appropriate range of damages for a jury to consider. In *Bayer Healthcare LLC v. Baxalta, Inc.*, 989 F.3d 964, 983-985 (Fed. Cir. 2021), the Court ruled that the district court was within its discretion to allow the patentee's damages expert to testify as to a range of reasonable royalties. Substantial evidence supported the jury's selection of a royalty within the range, which, like the damages the jury awarded here, was encompassed within the record as a whole. *Id*. at 985. The Court also noted that the infringer's criticisms went to weight rather than methodology. See, also, *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.,* 853 F.3d 1370, 1382 (Fed. Cir. 2017) ( the jury appropriately awarded damages within the $14.5M-$31.9M patentee's expert suggested).

 Neither party proposed a verdict form that required an explanation of the damages calculation and the jury did not accept either expert's opinion completely. However, the damage calculation the jury returned fell well within the reasonable range of price and quantity given the *Panduit* charge both parties

agreed to. *See, Wechsler v. Macke,* 486 F.3d 1286, 1297 (Fed. Cir. 2007)

("However, once we have determined that a viable legal theory exists, we must

assume the evidentiary facts were resolved in a way to support the jury's verdict,

and our review is limited to whether those inferred factual findings are supported

by substantial evidence.").

The Court credits this evidence and all reasonable inferences in Dynamite's

favor. On this standard, Dynamite submitted ample evidence to sustain the jury

verdict. As the district court found:

> The Court afforded counsel ample opportunity to attack the weight that the jury should accord [Schenk's] testimony. That their efforts failed does not provide a basis for post-judgment relief.

Appx13.

## VII. THE COURT CHARGED DAMAGES APPROPRIATELY

Sherman contends it raised an issue at trial regarding the damages period

that the district court should have used in its jury instruction due to a legal issue

concerning the effect of the assignment from Vante to Dynamite. Appx5275-

76. Dynamite pointed out to the district court that both damages experts and both

parties appeared to agree on the number of infringing units sold. Also, neither

expert discussed multiple infringement periods. Dynamite proposed deleting

instructing a date concerning the beginning of the infringement period and

instructing the jury using a fixed number of infringing units sold. Sherman agreed

to remove the date from the instruction and attempted to reserve its right to raise an

issue with respect to the assignment in a post-trial motion. App5276. Sherman did

not later raise the issue in a post-trial motion; therefore, it has no appeal issue.

Appx3622; Appx3701.

Nevertheless, Dynamite proved it had the right to sue for all of Sherman's

infringement because Vante assigned all rights including the right to sue for past

infringement to Dynamite. "Determining whether the right to sue for prior

infringement has been transferred turns on the proper construction of the

assignment agreements, which is a matter of state contract law." *Minco, Inc. v.*

*Combustion Engineering, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996). Here, the state

is New York.

In the assignment, the first transfer clause assigns 100% of Vante's interest

in the invention, the Patent application and the D'877 patent for the entire term of

the patent, which would include the portion of the term where Sherman infringed.

Appx5664. To the extent there is ambiguity in what is transferred, the second

clause states that the grant allows the Assignee (Dynamite) to hold and enjoy the

Assignor's rights as fully as if the assignment hadn't been made. Absent an

assignment, Vante would have held the right to sue for Sherman's infringement.

Thus, this language transfers everything Vante could have exercised under the

patent including the right to sue for prior infringement. In *Minco*, the assignment at

issue had virtually the same language as in paragraph two of the assignment in this case, and this Court found that the plaintiff received the right to sue for past infringement. *Id.* at 1117-18.

"The determination of whether a term in a contract is ambiguous is a question of law for the courts." *See, Elletson v. Bonded Insulation Company Inc.*, 272 A.D.2d 825, 827 (N.Y. App. Div. 2000). Had Sherman raised the issue it raises here, the court could have reviewed Shlaferman's testimony at trial. Shlaferman testified that when he executed the assignment on behalf of Vante, he intended to include the right to sue for past infringement. Appx4386. No conflicting evidence was introduced at trial. In New York parol evidence— evidence outside the four corners of the document—is admissible if a court finds an ambiguity in a contract. *See, Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (N.Y. 2013). As confirmed by Shlaferman's testimony, Vante's assignment to Dynamite transferred all rights to Dynamite including the right to sue for prior infringement.

Similarly, Sherman was not entitled to a charge on multiple damages periods based on its "faux redesign". Sherman cites to the same objection to the jury charge above, but Sherman never asked for a charge concerning the dates it began selling its other version of a TOL4. After the district court makes clear that Sherman waived the issue of dates with regard to the assignment, the court told

Sherman if there were no other issues with regard to dates it would remove dates from the jury charge, Sherman replied "[t]o remove the date? We don't have an objection." Appx5276.

The lack of clarity regarding Sherman's admitted infringing version and its "faux redesign" is a mess of Sherman's own making. Sherman's purported redesign of the TOL4 was a charade. Sherman never changed the part number, never changed the name of the product, and never announced any change in its catalogs or marketing. Appx5081-82. Keeping the same part number, the same name and selling a redesign that no one, including Sherman's own expert, can distinguish from an exact copy of the Wallet Ninja, is not a basis for a new trial or damage reduction.

Additionally, Sherman purposefully kept no business records showing when it allegedly began selling a redesign. Appx2499-506. Sherman's witnesses testified that they never removed any of the admitted infringing products from inventory and instead sold through their stock even after admitting infringement. Appx5081; Appx5102-3. There was no evidence purporting to show a breakdown of sales of the accused products between the admitted infringing design and the alleged redesign. Appx4. Sherman also never proposed a verdict form that addressed infringement periods. Sherman is not now entitled to complain about the damages instruction.

As the district court properly noted, Sherman's "argument that the jury verdict form should have required the jury to find the dates of infringement is not only an exercise in irrelevance on this record, but ignores the fact that defendants never requested such an inquiry be made and failed to object to the jury form despite repeated opportunities to do so." Appx15.

## VIII. THE DISTRICT COURT PROPERLY AWARDED ATTORNEY FEES AND COSTS

The district court's award of fees and costs is reviewed for an abuse of discretion. "To meet the abuse-of-discretion standard, the moving party must show that the district court has made 'a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'" *In re Rembrandt Techs., LP Pat. Litig.*, 899 F.3d 1254, 1266 (Fed. Cir. 2018) (*quoting, Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017)). A district court's fee award determinations are entitled to substantial deference on appeal in light of the district court's superior understanding of the litigation. *See, Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017).

After managing the litigation for years and watching the parties at trial, the district court characterized Sherman's conduct and arguments as: sophistry and misdirection (Appx6), perilously close to an attempt to mislead the Court (Appx7), oversimplifying, misconstruction, mischaracterizing the evidence (Appx10),

simply untrue (Appx11), unmitigated chutzpah in an attempt to distort the record

and mislead the court (Appx11), a sweeping attack unconstrained by the law,

evidence, common sense or the truth (Appx13), material distortion (Appx14), and

often bordering on frivolous (Appx15). *Amazon.com v. PersonalWeb Techs. (In re*

*PersonalWeb Techs.)*, No. 2021-1858, at *22 (Fed. Cir. Nov. 3, 2023) ("The

district court lived with this case and its counsel for years. It thoroughly reviewed

the totality of the circumstances to find that this case both lacked substantive

strength and was litigated in an unreasonable manner.")(internal quotations

omitted).

After carefully considering all of the evidence, including Sherman's "bad

conduct" (Appx15-16) and willful infringement (Appx3534), the court awarded

counsel fees in an amount that "is roughly equivalent to an award of double

damages." Appx18.  Sherman argues that while the court could have awarded that

amount as enhanced damages pursuant to § 284, since the court awarded it as

attorney fees, pursuant to § 285, it is reversible error.  The argument is wrong on

the facts and the law.

After detailing the facts that made this case exceptional, the district court

appropriately found that it had multiple reasons to enhance the jury award.

> Plainly, defendants' conduct, both during the underlying infringement
> as well as the course of the litigation, satisfies the requisite for the
> shifting of attorneys' fees and other costs *and justify the imposition of*
> *an award of enhanced damages.*

(Appx18) (emphasis added).

The Court then awarded an approximate additional $1.85 million to Dynamite, not solely as either an award of attorney fees or enhanced damages but to "compensate plaintiff for the costs of this protracted litigation while simultaneously serving the ameliorative purposes of an award of enhanced damages under § 284." Appx17-18. Thus, the award was appropriately made under both § 284 and § 285.

Even if the entire award was made pursuant to § 285, it was appropriate. Sherman's claim that "the court failed to explain the basis for the amount of the attorney's fees award" (OpeningBr. at 62) ignores that the award reflects the litigation expense actually incurred and documented by Dynamite, and Sherman's failure to challenge Dynamite's request with any specifics. Appx17. The award as such was compensatory, not punitive. Sherman has articulated no clear error in the district judge's damages award and given the "great deference" to which it is entitled, it should not be disturbed. *See, Energy Heating, LLC v. Heat On-The-Fly, LLC,* 889 F.3d 1291, 1307 (Fed. Cir. 2018).

## IX.    CONCLUSION

For all the foregoing reasons, the judgment of the district court should be

affirmed.


Dated: June 24, 2024                              Respectfully submitted,

                                                  */s/ Michael Cukor*
                                                  Michael Cukor
                                                  McGeary Cukor LLC
                                                  150 Morristown Road Suite 205
                                                  Bernardsville, New Jersey 07924
                                                  (973) 200-4837
                                                  mcukor@mcgearycukor.com

                                                  *Counsel for Plaintiff- Appellee*
                                                  Dynamite Marketing, Inc.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. Cir. R. 32(b).

This brief contains 13,398 words, excluding the parts of the brief exempted by Fed.

Cir. R. 32(b)(2) and Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This brief has

been prepared in a proportionally spaced typeface using Microsoft Word in a 14-

point Times New Roman font.

Dated: June 24, 2024

> */s/ Michael Cukor*
> Michael Cukor

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2024, I served the foregoing on all counsel of record by filing the document with the United States Court of Appeals for the Federal Circuit using the CM/ECF system.

Dated: June 24, 2024

*/s/ Michael Cukor*
Michael Cukor