**2024-1523; 2024-1525**

# United States Court of Appeals for the Federal Circuit

DYNAMITE MARKETING, INC.,

*Plaintiff-Appellee,*

— v. —

THE WOWLINE, INC., SHERMAN SPECIALTY LLC,
SHERMAN SPECIALTY, INC,

*Defendants-Appellants,*

WWW.SUPERIORPROMOS.COM, WWW.USIMPRINTS.COM,
WWW.4ALLPROMOS.COM, UNKNOWN WEBSITES 1-10,
VARIOUS JOHN DOES 1-10, UNKNOWN ENTITIES 1-10,

*Defendants.*

———————————

DYNAMITE MARKETING, INC.,

*Plaintiff,*

— v. —

4TH DIMENSON INNOVATIONS, INC., by and through
its former officer LaErik Cooper, LAERIK COOPER,

*Defendants.*

*On Appeal from the United States District Court for the Eastern
District of New York in No. 2:19-cv-03067-GRB-LGD*

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

Jeffrey L. Snow
Joseph V. Micali
Pryor Cashman LLP
Seven Times Square, 40th Floor
New York, New York 10036
(212) 421-4100
jsnow@pryorcashman.com
jmicali@pryorcashman.com
*Counsel for Defendants-Appellants*

July 29, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

ARGUMENT ....................................................................................1

I.  This Court's *LKQ* Decision Requires Reversal and Remand
    on Obviousness.........................................................................1

II. The District Court's Determination of the Inventorship Issue
    Should be Overturned..............................................................5

    A.  Sherman Has Standing on the Inventorship Issue ....................5

    B.  Both Parties Objected to the Jury Trial on Inventorship,
        and Sherman Did Not Consent to Submitting the Issue
        to the Jury.............................................................................6

    C.  Submission of the Inventorship Issue to the Jury Was
        Neither Appropriate Nor Harmless to Sherman .......................9

    D.  The Jury's Verdict on Inventorship Is Unsupported By
        the Corroborating Evidence ...................................................10

III. The Determination of Infringement Is Not Supported By
     Substantial Evidence ..............................................................12

IV.  The Determination of No Functionality Is Not Supported By
     Substantial Evidence ..............................................................14

V.   The Damages Verdict Is Not Supported By *Panduit* Analysis
     and Does Not Account for Key Periods............................................16

     A.  Dynamite Failed to Prove Absence of Acceptable Non-
         Infringing Substitutes...............................................................17

     B.  Dynamite Failed to Prove Demand for the Patented
         Product and to Quantify Lost Profits ........................................22

     C.  The Jury Charge and Jury Award Fail to Consider Key
         Periods Relating to Patent Ownership and Different
         Accused Products......................................................................25

VI.  The District Court Abused Its Discretion in Awarding
     Dynamite Attorney's Fees and Other Fees and Costs.........................27

CONCLUSION ..................................................................................29

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
    625 F.3d 1359 (Fed. Cir. 2010) ....................................................25

*Arachnid, Inc. v. Merit Indus.*,
    939 F.2d 1574 (Fed. Cir. 1991) ....................................................25

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
    1 F.3d 1214 (Fed. Cir. 1993) ........................................... 19, 22, 24

*Broadnax v. City of New Haven*,
    415 F.3d 265 (2d Cir. 2005) ......................................................8, 9

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
    282 F.3d 1370 (Fed. Cir. 2002) ....................................................14

*Dobson v. Dornan*,
    118 U.S. 10 (1886)........................................................................18

*Dobson v. Hartford Carpet Co.*,
    114 U.S. 439 (1885)......................................................................17

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ......................................... 2, 12, 13

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) ......................................................5

*Ethicon, Inc. v. United States Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998) ......................................................5

*EZ Dock, Inc. v. Schafer Sys., Inc.*,
    No. 98-2364, 2003 U.S. Dist. LEXIS 3634 (D. Minn. Mar. 8, 2003)...........22

*Fina Oil & Chem. Co. v. Ewen*,
    123 F.3d 1466 (Fed. Cir. 1997) ......................................................5

*Finalrod IP, LLC v. Endurance Lift Sols., Inc.*,
    No. 20-00189, 2021 U.S. Dist. LEXIS 202681
    (E.D. Tex. Oct. 20, 2021) ............................................................22

*Golden Eye Media USA, Inc. v. Evo Lifestyle Prods. Ltd.*,
No. 21-2096, 2022 U.S. App. LEXIS 17145
(Fed. Cir. June 22, 2022) ................................................................14

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)..............................................................................2

*Grain Processing Corp. v. American Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999) ............................................... 19, 21

*Group One Ltd. v. GTE GmbH*,
625 F. Supp. 3d 28 (E.D.N.Y. 2022) ..............................................17

*Hafco Foundry & Mach. Co. v. GMS Mine Repair & Maint., Inc.*,
No. 15-16143, 2018 U.S. Dist. LEXIS 106291
(S.D.W. Va. June 26, 2018)..............................................................16

*High Point Design LLC v. Buyer's Direct, Inc.*,
730 F.3d 1301 (Fed. Cir. 2013) ......................................................14

*In re Rosen*,
673 F.2d 388 (C.C.P.A. 1982).........................................................2

*Inventist, Inc. v. Ninebot Inc.*,
651 F. Supp. 3d 1228 (W.D. Wash. 2023) ......................................25

*Jarvis v. Ford Motor Co.*,
283 F.3d 33 (2d Cir. 2002) ...............................................................6

*Larson v. Correct Craft, Inc.*,
569 F.3d 1319 (Fed. Cir. 2009) .......................................................5

*Lexington Furniture Indus. v. Lexington Co.*,
No. 22-2993, 2023 U.S. App. LEXIS 34154 (2d Cir. Dec. 26, 2023) ........8, 9

*LKQ Corp. v. GM Glob. Tech. Operations LLC*,
102 F.4th 1280 (Fed. Cir. 2024) ................................................ 1-4

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ............................................... 17, 24

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
851 F.3d 1275 (Fed. Cir. 2017) ......................................................17

*Merex A.G. v. Fairchild Weston Sys.*,
29 F.3d 821 (2d Cir. 1994) ...............................................................8

*Minco, Inc. v. Combustion Engineering, Inc.*,
    95 F.3d 1109 (Fed. Cir. 1996) ........................................................26

*Modine Mfg. Co. v. Allen Group, Inc.*,
    917 F.2d 538 (Fed. Cir. 1990) .....................................................7, 9

*Oiness v. Walgreen Co.*,
    88 F.3d 1025 (Fed. Cir. 1996) ................................................. 23-24

*Pacific Life Ins. Co. v. Bank of N.Y. Mellon*,
    571 F. Supp. 3d 106 (S.D.N.Y. 2021) ...........................................22

*Park B. Smith, Inc. v. CHF Indus.*,
    309 F. App'x 411 (Fed. Cir. 2009) ...................................................2

*Presidio Components, Inc. v. American Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017) .....................................................18

*Rembrandt Techs., LP v. Comcast of Fla./Pa., LP*,
    899 F.3d 1254 (Fed. Cir. 2018) .....................................................28

*Shum v. Intel Corp.*,
    499 F.3d 1272 (Fed. Cir. 2007) .....................................................10

*Sofpool LLC v. Intex Rec. Corp.*,
    328 F. App'x 654 (Fed. Cir. 2009) ...................................................2

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011) ................................................ 27-28

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group*,
    68 F.4th 792 (2d Cir. 2023) ...........................................................17

*Top Brand, LLC v. Cozy Comfort Co.*,
    No. 21-597 (D. Ariz. July 3, 2024).................................................3

*Town & Ctry. Linen Corp. v. Ingenious Designs LLC*,
    No. 18-5075, 2022 U.S. Dist. LEXIS 125154
    (S.D.N.Y. July 14, 2022) ...............................................................19

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
778 F.3d 1365 (Fed. Cir. 2015), *judgment vacated on other grounds sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*,
577 U.S. 1099 (2016), *and opinion reinstated*, 824 F.3d 1344
(Fed. Cir. 2016) ........................................................................ 25, 27

**Statutes & Other Authorities:**

U.S. Const. Amend. VII ............................................................... 7

35 U.S.C. § 256 .................................................................. 5, 9, 10

35 U.S.C. § 284 .............................................................. 16, 27, 28

35 U.S.C. § 285 .............................................................. 27, 28, 29

9 Wright & Miller, Federal Practice & Procedure § 2333
(2d ed. 2005) ........................................................................ 9

Fed. R. Civ. P. 39 ........................................................................ 7

Fed. R. Civ. P. 39(c) .................................................................. 8, 9

Fed. R. Civ. P. 51 .................................................................. 1, 6, 7

# ARGUMENT

## I.    This Court's *LKQ* Decision Requires Reversal and Remand on Obviousness

The obviousness issue must be reconsidered in light of this Court's *having changed* the legal standard for determining obviousness, irrespective of whether the prior art references[1] cited in connection with obviousness were admitted into evidence at trial.[2]  In the recent *en banc* decision, *LKQ Corp. v. GM Glob. Tech.*

---

[1] The prior art includes those references discussed in trial testimony by Sherman's expert, Dr. Formosa, and shown in the admitted trial demonstrative reproduced in Sherman's Brief on page 41.  Appx3709; Appx5185-87; Appx6637-39; Appx6612-27.

[2] Dynamite criticizes Sherman's citation to prior art references relating to obviousness, alleging such references were not received into evidence at trial, and further claims that this is dispositive of the obviousness issue on appeal.  Dynamite Br. at 35.  Dynamite's argument, however, rings hollow because Dynamite knew about this issue at trial but nevertheless *failed timely to object* prior to submission of the obviousness issue to the jury.  Dynamite's failure to raise such an objection constitutes a waiver on appeal.  Fed. R. Civ. P. 51.  The jury received evidence, including witness testimony, on obviousness and rendered its verdict irrespective of any concern about admission of the proffered prior art references.  Moreover, the District Judge considered the obviousness issue in post-trial motions for judgment as a matter of law ("JMOL") and for a new trial without objection by Dynamite as to lack of admission of the prior art references.

As a legal question with underlying factual inquiries, obviousness is not an issue that should require admission of the prior art.  The factual inquiries of what the prior art is, what it discloses, and the motivations of a person of ordinary skill in the art may be addressed by evidence including fact and expert witness testimony.  Sherman provided testimony to satisfy these factual inquiries.  In any event, the District Judge considered the obviousness issue in the JMOL and new trial motions as a matter of law, further obviating the need for admission of the prior art references.

1

*Operations LLC*, 102 F.4th 1280 (Fed. Cir. 2024), the Court abolished the "rigid" threshold similarity or "basically the same" requirement of *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) (*Rosen-Durling* test), in favor of the more flexible framework set out in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

In *LKQ* itself, the Court remanded the obviousness issue in light of the newly-articulated legal standard. 102 F.4th at 1290, 1301. This Court took a similar approach of reversing and remanding pending appeals involving design patent infringement upon issuance of the watershed *en banc* decision in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). *Sofpool LLC v. Intex Rec. Corp.*, 328 F. App'x 654, 654-55 (Fed. Cir. 2009) (nonprecedential) ("Because the jury in the present case was instructed based on the point of novelty test eliminated by *Egyptian Goddess*, the judgment of the district court is vacated and the case is remanded for reconsideration and further proceedings as appropriate."); *Park B. Smith, Inc. v. CHF Indus.*, 309 F. App'x 411, 411-412 (Fed. Cir. 2009) (nonprecedential) ("The district court's grant of summary judgment of non-infringement to CHF Industries, Inc. was based upon the point of novelty test, which was eliminated by [*Egyptian Goddess*]. Accordingly, the judgment of the district court is vacated and the case is remanded for reconsideration and further proceedings as appropriate in light of *Egyptian Goddess*.").

The jury's verdict of non-obviousness should not be adopted because the instructions provided to the jury contravened the correct legal standard set out in *LKQ*. Appx3466-80 (Jury Charge). Despite the jury instruction's including aspects of both the *Rosen-Durling* test and the *Graham* framework (Appx5289-96), the court *required* the jury to perform its obviousness determination under the now overruled *Rosen-Durling* test (Appx5292; emphasis added):

> The obvious [*sic*] analysis involves a two-step process. First, one must find a single reference which is sometimes called the primary reference as something in existence, the design characteristic of which are basically the same as the claimed design. If you do not conclude that any of the items offered into evidence are basically [the] same as the claim of the '877 Design Patent, then the '877 Design Patent cannot be invalidated due to obviousness, ***and you do not need to go to the next step of the analysis***.

Because the District Court directed the jury to *terminate* its consideration of obviousness after looking for a primary reference under the *Rosen-Durling* test, and provide only a general verdict on the obviousness issue (Appx5533-34), this Court cannot conclude that the jury applied the correct legal standard for obviousness under *LKQ* to uphold the jury's verdict.[3] *Cf. Top Brand, LLC v. Cozy Comfort Co.*, No. 21-597 (D. Ariz. July 3, 2024) (denying motion for new trial in

---

[3] During the jury charge conference, Dynamite's counsel argued in favor of limiting the jury instruction to the *Rosen-Durling* two-step analysis. Appx5266, 5270.

light of *LKQ* where "the jury in this case was **not instructed to stop** if the initial

*Rosen* 'basically the same' requirement was not met.") (emphasis added).

The need to reconsider obviousness in light of the *LKQ* decision is evident

because Dynamite continues to ply its argument under the *Rosen-Durling* test

claiming that Dr. Formosa's *primary reference* is not visually similar to the

claimed design of the D'877 patent.  Dynamite Br. at 36.  Under the holding of

*LKQ*, obviousness must be analyzed under the *Graham* framework without first

requiring identification of a primary reference.  *LKQ*, 102 F.4th at 1295-1300.

Accordingly, Dynamite's allegations that Sherman failed to show

obviousness and that Dynamite presented substantial evidence of non-obviousness

(Dynamite Br. at 35-38), as well as Sherman's proffered evidence of obviousness

(Sherman Br. at 40-41), must be considered under the correct legal standard, and

Sherman must be permitted to present its evidence directed to the proper test for

obviousness, including additional prior art references now applicable under the

new framework.

For these reasons, if this Court does not consider the evidence presented at

trial establishes obviousness of the D'877 patent, the jury's verdict at least should

be vacated and the obviousness question remanded for reconsideration in light of

the *LKQ* decision.

## II.     The District Court's Determination of the Inventorship Issue Should be Overturned

### A.     Sherman Has Standing on the Inventorship Issue

Contrary to Dynamite's claim, Sherman had and continues to have standing to pursue the inventorship claim under 35 U.S.C. § 256 in the District Court and to appeal the issue to this Court. Significantly, Dynamite fails to recognize or inform the Court that Mr. Cooper, the unnamed co-inventor, *assigned his rights in the D'877 patent to Sherman*. Appx4586-88; Appx5730-37. As the assignee of Cooper's ownership rights in the patent throughout the trial and this appeal, Sherman has the requisite interest in the D'877 patent to confer standing with respect to the inventorship claim. *See Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997) ("A patentee or its assignee may state a claim under this section [256] even where there is not a consensus on the correct inventorship as long as all parties are given notice and an opportunity to be heard."); *cf. Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009) (where party lacks an ownership interest in the patent, and will not receive any other direct financial rewards from being declared an inventor, that party does not have standing to sue under § 256); *see also Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1459 (Fed. Cir. 1998) (licensee of omitted co-inventor moved to correct inventorship); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 n.2 (Fed. Cir. 2004) ("The district court correctly held that Dr. DiMarchi's status as a co-

5

inventor . . . entitled Lilly, as the assignee of Dr. DiMarchi's interest, to the rights of a co-owner of the entire '477 patent.").

The inventorship issue constitutes one of Sherman's defenses to Dynamite's patent infringement claim, and the matter of co-inventorship was litigated by both Sherman and Cooper in the court below *without objection from Dynamite*. *E.g.*, Appx574 (joint letter requesting summary judgment motion on inventorship by Sherman and Cooper). The District Court *joined* the inventorship claim, as originally brought in Dynamite's Florida case against Cooper transferred to the Eastern District of New York, to the underlying action. Appx45-46; Appx1163. As both defendant and assignee of Cooper's rights in the patent, Sherman has standing with respect to the inventorship claim, and this Court has jurisdiction to hear the appeal of this issue.

### B.    Both Parties Objected to the Jury Trial on Inventorship, and Sherman Did Not Consent to Submitting the Issue to the Jury

Sherman took all actions possible and necessary to preserve its claim of the District Court's error in submitting the inventorship issue to the jury. This is not a matter of simply objecting to proposed jury instructions under Federal Rule of Civil Procedure 51 to preserve a claim of error but involves the separate legal error of submitting the inventorship claim to the jury.[4]

---

[4] Dynamite cites inapplicable *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 56-57 (2d Cir. 2002), which concerns an objection to an inconsistency between two

Submission of the inventorship issue to the jury implicates the constitutional jury trial right under the Seventh Amendment and the conduct of trials under Federal Rule of Civil Procedure 39. The case law cited by Dynamite does not affect these legal considerations. Notably, Dynamite's reference to *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538 (Fed. Cir. 1990), for the proposition that failure to object to a jury instruction under Rule 51 precluded a challenge to a district court's use of a jury to consider inequitable conduct, an equitable issue (Dynamite Br. at 21), is inapt. This Court distinguished the facts in *Modine*, where the objecting party contended it had made clear in prior communications to the court its position that inequitable conduct was not a jury issue, from two previous Ninth Circuit decisions. 917 F.2d at 542. The present case is in line with the Ninth Circuit cases, about which this Court stated (*id.*; emphasis added):

> In *Brown* and *Martinelli*, both parties had submitted contradictory proposed jury instructions and the trial judge had explicitly rejected one over the other. The Ninth Circuit held that in such a situation an objection to an instruction was not necessary under Rule 51 because the trial court had been made aware of the losing party's verbatim position as set forth in its contrary proposed instruction, and **an additional objection would not have served to further focus the issue or change the court's mind**.

---

general verdicts traced to an alleged error in the jury instruction, not whether an issue should have been submitted to the jury in the first instance.

The District Court's insistence on submitting the inventorship claim to the jury, despite the parties' request for the issue to be heard by the court in a bench trial, constitutes reversible error.  Consistent with other pretrial and post-trial proceedings (Sherman Br. at 19), the parties brought a joint motion to bifurcate the trial and conduct a bench trial on the inventorship claim.  Appx2586-87; Appx54-55.  The District Judge denied the motion and unabashedly summoned the parties to conduct a jury trial on the inventorship issue—clearly indicating that further objection to a jury trial would not have served further to focus the issue or change the court's mind.[5]  Sherman Br. at 19 n.6.

Similarly incorrect is Dynamite's argument that Sherman consented to the jury's deciding the question of inventorship in accordance with Rule 39(c) and that "all the parties consented to a jury trial on inventorship by not objecting at the charge conference."  Dynamite Br. at 22.  Dynamite's misstatement is belied by the parties' having filed a joint motion for a bench trial on the inventorship claim.[6]  Moreover, Dynamite's references to *Broadnax v. City of New Haven*, 415 F.3d 265 (2d Cir. 2005), and *Lexington Furniture Indus. v. Lexington Co.*, No. 22-2993,

---

[5] Accordingly, Sherman need not address whether the instructions submitted to the jury on the inventorship claim were objectionable.

[6] "Indeed, absent the consent of the parties, it would be highly questionable for a court to submit an equitable issue to an advisory jury for a binding verdict." *Merex A.G. v. Fairchild Weston Sys.*, 29 F.3d 821, 826 (2d Cir. 1994).

2023 U.S. App. LEXIS 34154 (2d Cir. Dec. 26, 2023), are inapposite, as these cases do not involve the type of joint motion or lack of consent at issue here. These cited cases find that "'if **one party** demands a jury, the other one does not object, and the court orders trial to a jury, this will be regarded as trial by consent' under Rule 39(c)." *Broadnax*, 415 F.3d at 271 (quoting 9 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2333 (2d ed. 2005)) (emphasis added); *Lexington Furniture*, 2023 U.S. App. LEXIS 34154, at *4; *Modine*, 917 F.2d at 542 n.2.  In the present action, *no party* requested a trial by jury on the inventorship issue, and the cited precedent does not apply.[7]

### C.  Submission of the Inventorship Issue to the Jury Was Neither Appropriate Nor Harmless to Sherman

Dynamite incorrectly asserts that the District Court's use of a jury was proper because Sherman concedes "that a § 256 inventorship claim co-pending with another legal claim, for which 'commonality exists between the factual issues,' should be tried to a jury to determine the facts regarding inventorship as well as the other legal claim." Dynamite Br. at 23.  Dynamite misunderstands the

---

[7] These decisions are further distinguishable because, as the court in *Broadnax* concluded, the equitable issue (calculating lost wages) submitted to the jury based on consent due to one party's failure to object, "requires no special competence or authority belonging solely to the court" and its "conclusion is borne out by the frequency with which juries are permitted to calculate lost wages in other areas of the law." 415 F.3d at 272.  In contrast, Congress specifically directed the inventorship issue to the court in the first instance under 35 U.S.C. § 256, and inventorship claims are not frequently tried to juries.

law set out in *Shum v. Intel Corp.*, 499 F.3d 1272 (Fed. Cir. 2007), that an infringement claim, which includes the issue of ownership as a jurisdictional requirement, is not another claim that shares common factual issues with an inventorship claim.  Sherman Br. at 21; *Shum*, 499 F.3d at 1278.

Moreover, submission of the inventorship issue to the jury was not harmless to Sherman.  The District Judge made clear that he had reached a different conclusion on co-inventorship prior to the verdict.  Regarding "whether or not Mr. Cooper contributed a sufficient quantum to be an inventor," the court stated, "*I don't know what instruction you can come up with where the answer is not yes, he was.*"  Appx4485 (emphasis added).  It is because of such judgment that Congress vested the court, rather than the jury, with the authority in the first instance to decide the issue.  35 U.S.C. § 256 ("The court before which such matter is called in question may order correction of the patent on notice and hearing . . .").

### D.     The Jury's Verdict on Inventorship Is Unsupported By the Corroborating Evidence

Dynamite's rehashing the trial testimony on inventorship (Dynamite Br. at 25-27) glosses over the lack of evidence on key points, particularly corroboration of Shlaferman's claim that he alone conceived the entirety of claimed design.  Dynamite admits to a lack of corroborating evidence regarding events that happened many years earlier (*id*. at 26; emphasis added):

10

Shlaferman also communicated his design elements and revisions to Cooper via phone, text and email. **Many such communications were lost due to the passage of time**. Appx4352-53. A reasonable jury could have concluded that Shlaferman imparted his invention to Cooper in **drawings, video conferences, phone conferences, text messages, emails and conversations that, due to the passage of time, are lost**. Without the complete record, **the jury could have concluded that it was impossible to corroborate Cooper's version of what happened 10 years ago.**

Consequently, Dynamite necessarily admits that *Dynamite's* "version of what happened 10 years ago" is also "impossible to corroborate." This comports with Dynamite's failure to provide any corroborating evidence that Cooper was not the contributor of "the placement and design of the hex-shaped design elements" to the claimed design of the D'877 patent. As Sherman explained, after Shlaferman's original concept sketch, which did not include hex-shaped cutouts along an outer edge (but rather included an internal hole), the *next* drawing in the inventive process was Cooper's drawing showing a series of **hex-shaped cutouts along one edge in a mound shape**. Sherman Br. at 24. No other corroborating documentation shows that Shlaferman contributed the mound shape of hex-shaped cutouts along one edge, an *inventive contribution by Cooper*. Appx7; Appx4455 (Cooper explained that "he reordered the hex cutouts such that it 'made it look like a mound'").

Moreover, contrary to Dynamite's claims, how Cooper or Shlaferman's patent attorney *acted after conception* of the claimed design of the D'877 patent as

11

an alleged indication of whether Cooper was a co-inventor should not be viewed to contradict the corroborating evidence, *i.e.*, the inventors' correspondence and exchanged drawings, introduced before the District Court. Significantly, Shlaferman, *at his own behest*, sought to correct the inventorship of the D'877 patent to add Cooper as a joint inventor. Appx4573-74; Appx5941-46.

For all of these reasons, this Court should vacate the jury's verdict and the District Court's denial of Sherman's JMOL motion on the inventorship claim.

## III.    The Determination of Infringement Is Not Supported By Substantial Evidence

Setting aside the original version of the accused TOL4 product, Dynamite's evidence cannot establish infringement by the redesigned Sherman product. The redesigned product is distinguishable from the D'877 patent in light of the arrangement and placement of the features that compose the claimed design. *See* Dynamite Br. at 29-30 (comparing claimed design, original accused TOL4 product, and redesigned TOL4 product);[8] *Egyptian Goddess*, 543 F.3d at 678 ("In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of

---

[8] These images explain any purportedly mistaken testimony of Sherman's expert, Dr. Formosa, of the effect that the two different versions of the TOL4 product were "pretty identical." *See* Sherman Br. at 30 n.12.

12

proving the two designs would appear 'substantially the same' to the ordinary observer[.]").

Moreover, the purported "evidence" of infringement introduced through the testimony of Dynamite's expert, Professor Rake, is faulty and insufficient to establish infringement. By viewing the infringement question through the lens of judicially-criticized "gestalt principles," which involve *ignoring* features of the claimed design on the basis of the "impression" formed by an observer about the design, Professor Rake *taught away* from a finding of infringement. Sherman Br. at 32-34. Significantly, there was no evidence at trial why an ordinary observer would view the "mound" arrangement of the hex-shaped cutouts claimed in the D'877 patent to be the same as the arrangement decreasing in size from left to right in the accused product. Ignoring aspects of an accused product that must be examined under the correct legal standard cannot provide a sufficient basis to conclude design patent infringement.

The only competent evidence on infringement was presented by Sherman's expert. This testimony, alone or along with the improperly-excluded testimony of Sherman's additional expert, Mr. Davila, establishes that an ordinary observer, taking into account all of the claimed design elements in assessing the similarities between the accused product and the D'877 patent, would not perceive the two designs to be substantially the same. *See Egyptian Goddess*, 543 F.3d at 670;

13

*Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("[A]ll of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement.").

Thus, without substantial evidence to support a determination that Sherman's redesigned product infringed the D'877 patent, this Court should vacate the jury's verdict and the District Court's denial of Sherman's JMOL motion and motion for a new trial on the issue of infringement.

## IV. The Determination of No Functionality Is Not Supported By Substantial Evidence

A design patent is invalid as primarily functional if the design is "dictated by the utilitarian purpose of the article." *Golden Eye Media USA, Inc. v. Evo Lifestyle Prods. Ltd.*, No. 21-2096, 2022 U.S. App. LEXIS 17145, at *4 (Fed. Cir. June 22, 2022) (citing *High Point Design LLC v. Buyer's Direct, Inc.*, 730 F.3d 1301, 1315 (Fed. Cir. 2013)).

With reference to the illustration demonstrating the scope of the claimed design of the D'877 patent (Sherman Br. at 24 & 41) in view of Dynamite's Wallet Ninja (Dynamite Br. at 4), the only features of the product explicitly included in the claimed design are the utilitarian features of a letter opener, a box opener, and six hex nut wrench openings, all disposed on edges of the product. Not only is every element of the claimed design utilitarian, but also the overall combination of these features in the claimed design is unduly functional.

14

All of the evidence adduced at trial supports finding that the claimed design of the D'877 patent is dictated by function. Sherman's expert, Dr. Formosa, testified that the overall claimed design is "very functional" and "very utilitarian," including for each of the utilitarian features. Appx5165-66 (explaining the use and location of the hex-shaped cutouts); Appx5166-69 (concluding the box cutter, letter opener, and broken-line screwdriver "are all very standard utilitarian shapes"); Appx5174 ("There is nothing that I see in this patent that looks beyond its functional purpose. So as a whole, or element by element, everything I'm looking at is purely based on its functional needs."); Appx5170 ("in its entirety it's a utilitarian object"). Contrary to Dynamite's assertions (Dynamite Br. at 32), even the tool selection and layout of the claimed design are dictated by function, namely useful tools placed along edges of a credit-card sized device for ease of use. There are limited ways to select such useful tools and place them on a credit-card sized device. Dynamite cites no evidence from the trial to the contrary, nor does it provide any evidence of alternative designs that provide the same or similar functional capabilities as the same design. In contrast, Dr. Formosa addressed these issues with specificity. *Compare* Dynamite Br. at 33 (identifying alleged "evidence of design") *with* Sherman Br. at 36-39 (addressing functionality with respect to the claimed design as a whole and for specific features).

Thus, without substantial evidence to support a finding that the claimed design of the D'877 patent is not dictated by function, this Court should vacate the jury's verdict and the District Court's denial of Sherman's JMOL motion and motion for a new trial on the issue of functionality.

## V.     The Damages Verdict Is Not Supported By *Panduit* Analysis and Does Not Account for Key Periods

Dynamite does not dispute that its damages claim is based solely on its purported lost profits, nor does it allege or provide evidence to support a claim for reasonable royalties or Sherman's profits.  Appx9 ("Plaintiff sought damages on a lost profit theory under 35 U.S.C. § 284"); Appx5257-58 (acknowledging reasonable royalty is not a damages option).  Accordingly, upon overturning the jury's verdict on damages due to evidentiary failures in connection with the *Panduit* analysis, Dynamite's damages award should be entirely vacated.  *See, e.g.*, *Hafco Foundry & Mach. Co. v. GMS Mine Repair & Maint., Inc.*, No. 15-16143, 2018 U.S. Dist. LEXIS 106291, at *15-*16 (S.D.W. Va. June 26, 2018) (noting Federal Circuit's approval of awarding zero damages for lack of evidence in the record regarding reasonable royalty rate).

Dynamite relies on the unsupported and incredulous conclusions of its damages expert, Ms. Schenk, for its *Panduit* analysis.  Because these conclusions formed the entire basis of Dynamite's lost profits analysis, the improper admission

16

of Schenk's testimony and expert report were not harmless.[9]  *See Lucent Techs.,*

*Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1310 (Fed. Cir. 2009) (reversing damages

award when "clearly not supported by the evidence").

### A.      Dynamite Failed to Prove Absence of Acceptable Non-Infringing Substitutes

The second *Panduit* factor, "absence of acceptable noninfringing

substitutes," is dispositive in this appeal.[10]  This factor "often proves the most

difficult obstacle for patent holders."  *Mentor Graphics Corp. v. EVE-USA, Inc.*,

851 F.3d 1275, 1286 (Fed. Cir. 2017).  Compounding this difficulty is that this

factor considers "demand for particular limitations or features of the claimed

invention" (*Group One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 74 (E.D.N.Y.

2022) (citing *Mentor Graphics*, 851 F.3d at 1285)), which is an individualized-

element and functionality-driven inquiry, but the D'877 patent is a design patent,

not a utility patent.  *See Dobson v. Hartford Carpet Co.*, 114 U.S. 439, 445 (1885)

("Approval of the particular design or pattern may very well be one motive for

purchasing the article containing it, but the article must have intrinsic merits of

quality and structure, to obtain a purchaser, aside from the pattern or design.");

---

[9] Sherman's motion *in limine* requesting exclusion of Schenk and her expert report was rejected by the court.  Appx4783-84; Appx4957.

[10] Dynamite's citation of *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group*, 68 F.4th 792, 800 (2d Cir. 2023), is inapt, and the statement that "the Court disregards any evidence the jury was not required to accept" is unsupported.

*Dobson v. Dornan*, 118 U.S. 10, 18 (1886) ("[T]he presumption is at least equal that the cheaper price, and not the pattern, sold the defendants' carpets."); Appx8 (court's express finding that "the [Wallet Ninja] invention's *myriad **functions** drive its value*, ***not*** *the niceties of the* ***appearance***—or arguably even the utility— of a particular feature.") (emphasis added); Appx12 (court using term "a product with patented features" rather than having the claimed design).

Unsurprisingly, Dynamite improperly attempts to shift the burden on Sherman to demonstrate the presence of acceptable non-infringing substitutes, which Sherman has adequately shown, rather than prove the requisite *absence* of such substitutes. *See Presidio Components, Inc. v. American Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 & 1384 (Fed. Cir. 2017) ("To recover lost profits, the patentee bears the burden of proof to show a 'reasonable probability that, 'but for' infringement, it would have made the sales that were made by the infringer.'") ("We reverse the award of lost profits because [patentee] failed to show the absence of an acceptable, non-infringing substitute.").  Critically, as encapsulated by Schenk's deficient, conclusory testimony, Dynamite could not define what an acceptable non-infringing substitute would look like or what form would it take. Appx4981 (Schenk's non-response to question, "What would an acceptable non-infringing alternative in this case look like, in [your] opinion?"); Appx4980 (Schenk's disagreement with statement that "in this case, an example of an

18

acceptable non-infringing alternative might be another multitool."). Dynamite's failure to define the parameters of a potential acceptable non-infringing substitute necessarily corresponds to the impossibility in proving its absence, which is determinative of the *Panduit* analysis and fatal to Dynamite's lost profits claim.

In seeking to flip the issue to Sherman, Dynamite argues against all of the valid acceptable non-infringing substitutes presented by Sherman and its expert, Mr. Eisgruber. Notwithstanding, Dynamite cites *another* acceptable non-infringing substitute, Sherman's No Touch Multi-Tool (Appx6640), reproduced in part below; *see also* Appx4271 & Appx5901). Dynamite, however, summarily asserts that this product cannot be considered an acceptable non-infringing substitute because it purportedly "failed" commercially. Dynamite Br. at 44; Appx6415 (Schenk asserting "sales of the No Touch Multi-Tool were minimal"). Dynamite's arguments concerning commercial success are irrelevant and unsupported by precedent. Instead, the inquiry is whether a product is "available or on the market at the time of infringement." *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1348 (Fed. Cir. 1999).[11]

---

[11] Another requirement concerning the second *Panduit* factor is that "the patent holder and the infringer are direct competitors in the *same* market." *Town & Ctry. Linen Corp. v. Ingenious Designs LLC*, No. 18-5075, 2022 U.S. Dist. LEXIS 125154, at *93 (S.D.N.Y. July 14, 2022) (emphasis added); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993). The parties' operating in the same market was not and cannot be established here, where Sherman sold its products solely in the promotional market while the Wallet Ninja



NO TOUCH MULTI-TOOL

Dynamite pushes back against other acceptable non-infringing substitutes, namely the Pocket Monkey and Wallet Ninja Pro products, on the basis that Schenk addressed them in her reports. However, there are no "conflicting sets of facts," but rather the jury's verdict is "clearly not supported by the evidence," since Schenk's testimony and reports fail to provide any evidentiary support on this factor concerning these products. Dynamite did not, and cannot successfully, engage with Sherman's arguments in establishing that these products would not be acceptable non-infringing substitutes. The Wallet Ninja was developed in response to Shlaferman's discovery of the Pocket Monkey and his failure to become its

products were retail products. Appx4909 (Shlaferman admitting that "Wallet Ninja" products were sold through e-commerce retailers or his website). Shlaferman's advertising on his website of the ability to do "custom" jobs does not support the premise that Wallet Ninja products are sold in the promotional market. Appx4909; *see* Appx4882 ("Q. Did you have a website dedicated to selling promotional Wallet Ninjas? A. Yes, I did. It's walletninja.com forward slash *custom*.") (emphasis added).

exclusive distributor.  Appx4398-99; Appx5903-04.  Additionally, the Wallet

Ninja Pro, admittedly a non-infringing product according to Schenk, was

improperly disregarded due to alleged lack of commercial success.  Appx6561.

Such arguments concerning overall commercial success of a product, rather than

simply the existence of market sales, are not determinative or relevant as to

whether a product is an acceptable non-infringing substitute.  *Grain Processing*,

185 F.3d at 1348; *id.* at 1352 ("[M]arket sales of an acceptable noninfringing

substitute often suffice alone to defeat a case for lost profits.").  Sherman's expert,

Mr. Eisgruber, brought these products, in addition to many others, to the attention

of Dynamite and Schenk, who baselessly dismissed them.  Appx6559 (Schenk

acknowledging that Sherman was "promoting the No Touch Multi-Tool as a

replacement for the Accused Products"); Appx6559-60 ("Mr. Eisgruber points to

multiple alleged non-infringing alternatives available to customers and/or

Defendants in the market, including: . . . The Pocket Monkey."); Appx6561 ("Mr.

Eisgruber argues that Dynamite itself offers alternative designs to the Wallet Ninja

with the Wallet Ninja 2.0 and the Wallet Ninja Pro.").

Dynamite does not dispute that Schenk failed to perform her own search for

acceptable non-infringing substitutes but merely relied upon "facts that were

reported to her by Dynamite's other witnesses" (Dynamite Br. at 41), namely

Shlaferman and Bronson, both of whom could not provide testimony on whether

21

they reported to Schenk the lack of acceptable non-infringing substitutes.

Appx4765 (Bronson); Appx4912-13 (Shlaferman); *see* Appx6423-25 (Schenk's

report concerning second *Panduit* factor relying on "Discussion with Alex

Shlaferman, David Bronson, and [Dynamite's expert] Lance Rake"); Appx4764

(Sherman counsel: "Ms. Schenk provides an opinion that there are no acceptable

noninfringing alternatives in her report." Court: "This witness [Bronson] wouldn't

know about that." Sherman counsel: "Correct, and her basis for that opinion, part

of that basis is Mr. Bronson."). Such bald reliance by Schenk on the opinions of

Dynamite's other experts, chiefly Bronson, is improper. *See Pacific Life Ins. Co.*

*v. Bank of N.Y. Mellon*, 571 F. Supp. 3d 106, 115-16 (S.D.N.Y. 2021); *EZ Dock,*

*Inc. v. Schafer Sys., Inc.*, No. 98-2364, 2003 U.S. Dist. LEXIS 3634, at *15-*17

(D. Minn. Mar. 8, 2003); *Finalrod IP, LLC v. Endurance Lift Sols., Inc.*, No. 20-

00189, 2021 U.S. Dist. LEXIS 202681, at *6-*9 (E.D. Tex. Oct. 20, 2021).

### B. Dynamite Failed to Prove Demand for the Patented Product and to Quantify Lost Profits

Schenk also failed to provide independent evidence as to the first *Panduit*

factor, "demand for the patented product," to support the jury's assessment of lost

profit damages.[12] Schenk did not consult or utilize any industry or consumer data,

---

[12] As with the second *Panduit* factor, the first factor also requires direct
competition in the *same* market. *See BIC Leisure*, 1 F.3d at 1218-19 ("The first
*Panduit* factor . . . presupposes that demand for the infringer's and patent owner's
products is interchangeable. . . . If the products are not sufficiently similar to

surveys, or studies to demonstrate demand for the patented product. Critically, Schenk admitted that she failed to study the issue of demand for the Wallet Ninja. Appx4986-87 ("I didn't go out and say do a consumer survey, . . . that wasn't what I was asked to do in this case."). Schenk again impermissibly relied upon the opinions of Bronson and Rake, which are themselves insufficient. Rake could not testify as to whether he relayed to Schenk that demand for the accused product was driven by its similarity to the patented Wallet Ninja design. Appx4876-77 ("I don't think I would have said that." "Again, I don't [know] why I would have said that."). Additionally, Bronson's conclusion concerning demand was that the Wallet Ninja had a "cool factor" and became "hot." Appx4993-94 (Schenk's acknowledgement of Bronson's conclusions). This opinion amounts to unfounded speculation. Appx4749-53 (Bronson failed to substantiate his claims through surveys, consumer interviews, and analyses quantifying the purported demand; "What did you review in order to come to the conclusion that the Wallet Ninja had a cool factor?" "I saw it online. I saw where it was available. I saw the advertising for it. So I figured it must be getting a lot of traction and popularity and thought it was a cool item."); *see Oiness v. Walgreen Co*., 88 F.3d 1025, 1030,

---

compete in the same market for the same customers, the infringer's customers would not necessarily transfer their demand to the patent owner's product in the absence of the infringer's product. In such circumstances, as in this case, the first *Panduit* factor does not operate to satisfy the elemental 'but for' test.").

1032 (Fed. Cir. 1996) (reversing lost profits award on the basis of expert's "rapt," "bald speculation").

Dynamite's insufficient evidentiary basis for the fourth *Panduit* factor concerning quantification of lost profits ("the amount of the profit he would have made") also mandates vacating the damages award, as Schenk promulgates an implausible claim that Dynamite would have captured *100%* of Sherman's sales, similarly based on Bronson's unsupported opinion.  Appx4931; Appx4759-65; Appx6428; *see Lucent Techs.*, 580 F.3d at 1310 (reversing a jury award "based only on speculation or guesswork").  Given the presence during the relevant time periods of a plurality of commercially-available multi-tools, including the Pocket Monkey, the M48 Kommando Pocket Rescue Tool, and Sherman's own No Touch Multi-Tool, which Schenk expressly alleges serves as a substitute of the accused product for Sherman (Appx6559), it is not credible to suggest that Dynamite would have captured each and every sale of the accused product.[13]

---

[13] Another aspect of Dynamite's unreasonable position is that it would have captured all of Sherman's wholesale promotional market sales *at the Wallet Ninja's higher retail market prices*.  Dynamite attempts to minimize applicability of *BIC Leisure*, comparing the price differential here to the cost of "a medium coffee."  This cheeky analogy fails to appreciate the fact that the accused products are bulk buy items in the promotional market and a $3 difference per unit easily becomes the price disparity reflected in *BIC Leisure* or worse.

Moreover, Dynamite again touts Schenk's inappropriate reliance on the opinions of Dynamite's other experts and Shlaferman with respect to "evidence" of customers' "willing[ness] to pay higher prices than Sherman's."  Dynamite Br. at 55.  The sole example articulated by Schenk is incomplete and valueless.

24

### C.    The Jury Charge and Jury Award Fail to Consider Key Periods Relating to Patent Ownership and Different Accused Products

Sherman properly raised the existence of a fatal error in the jury charge and damages award due to the failure to define the correct infringement period, namely the period when Dynamite was the patent owner after assignment from Vante Inc. Appx5664-66 (May 18, 2018 assignment from Vante Inc. to Dynamite that did not recite a grant of the right to sue for past infringement); *Arachnid, Inc. v. Merit Indus.*, 939 F.2d 1574, 1579 n.7 (Fed. Cir. 1991); *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 (Fed. Cir. 2010); *Inventist, Inc. v. Ninebot Inc.*, 651 F. Supp. 3d 1228, 1242-43 & 1243 n.6 (W.D. Wash. 2023) (citing *Arachnid* and *Abraxis*, noting "the Federal Circuit has rejected 'implied' assignments [of the right to sue for past infringement]"); *see also Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015) ("Under [Federal Circuit] case law a patentee may not claim, as its own damages, the lost profits of a related company."), *judgment vacated on other grounds sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 577 U.S. 1099 (2016), *and opinion reinstated*, 824 F.3d 1344 (Fed. Cir. 2016). Dynamite's retort that "both parties appeared to

---

Appx4951 (discussion of $44 purchase order at $1.36 per unit from Sherman, while failing to state how many units were later purchased from Dynamite and at what total cost).

agree on the number of infringing units sold" does not implicate or resolve this issue of different time periods in which these products were sold.

Dynamite flatly mischaracterizes *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109 (Fed. Cir. 1996), as the assignment in that case expressly recited "all rights of action and damages for past infringement."[14]  In contrast, the Vante-Dynamite assignment makes no reference to past infringement.  Instead, the assignment at issue simply utilizes the type of "bare reference to all right, title, and interest" language that *Minco* noted was insufficient.  *Id.* at 1117.  There is no ambiguity, and Shlaferman's testimony to the contrary does not remedy this defect in the written assignment.

Additionally, the evidence adduced at trial establishes the need to differentiate between the time when Sherman was selling the original version of the accused product and when Sherman began selling the redesigned product in 2018.[15]  Appx5080 (Dynamite's reliance on testimony concerning infringement

---

[14] "CE challenges one link in this chain — the assignment to MAC. The long form assignment from Jenkins and Richards to MAC transferred 'all of Assignors' right, title and interest.' Under the general rule, the bare reference to all right, title, and interest does not normally transfer the right to sue for past infringement. Moore, 74 U.S. (7 Wall.) at 522. *The MAC assignment, however, expressly notes that Richards received all 'right, title, and interest' from Rawles, **including 'all rights of action and damages for past infringement**.'" Minco*, 95 F.3d at 1117 (emphasis added).

[15] Sherman sold the original version of the accused product from July 2017 to May or June 2018, predominantly during the period when Vante Inc. was still

only by the original version but not the redesign).  As the jury failed adequately to

consider and articulate this threshold issue, a new trial would be needed as a matter

of law.  *See Warsaw Orthopedic*, 778 F.3d at 1378 (ordering a new trial when there

were two periods of potential infringement and "[n]either the court's instructions

nor the verdict form specified the period of infringement during which the jury

should award damages.").

## VI.    The District Court Abused Its Discretion in Awarding Dynamite Attorney's Fees and Other Fees and Costs

The District Court specifically declined to award enhanced damages under §

284.  Appx18 (court "declines to award enhanced damages").  Thus, the court

decided not to address the punishment aspect of the statute.  By nevertheless

awarding *attorneys' fees* and costs *as punishment* to Sherman rather than as

compensation for Dynamite, the District Court inappropriately and erroneously

conflated the punitive purposes of enhanced damages under § 284 and the

compensatory purposes of attorney's fees and costs under § 285.

Dynamite incorrectly states that the District Court's award of attorneys' fees

and other fees and costs "was appropriately made under both § 284 and § 285."

Dynamite Br. at 63.  Dynamite's assertion contradicts clear precedent that the

analyses for enhanced damages and attorney's fees are separate.  *Spectralytics, Inc.*

---

the patent owner, and then afterwards began selling the redesigned product.
Appx5086; Appx2502; Appx5037-45.

27

*v. Cordis Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011).  An award of attorneys'

fees, which is directed to compensation, cannot "*simultaneously* serv[e] the

ameliorative purposes of an award of enhanced damages under § 284" (Appx18;

emphasis added).  Attorneys' fees under § 285 are compensatory, not punitive, and

the court may not impose an additional amount as punishment for the party's

misbehavior.  *Rembrandt Techs., LP v. Comcast of Fla./Pa., LP*, 899 F.3d 1254,

1278-79 (Fed. Cir. 2018).

Dynamite is equally incorrect in its assertion that the District Court's

attorneys' fees "award as such was compensatory, not punitive."  Dynamite Br. at

63.  The District Court only described the attorneys' fees award as a form of

enhanced damages, which can only be awarded under § 284.  Appx18 ("the

amounts sought for attorneys' fees, expert fees and costs . . . is roughly equivalent

to an award of double damages").  Moreover, the District Court needed not only to

find that the attorneys' fees award was compensation for Dynamite relating to the

litigation, but also to identify the relationship of the amount of the award to the

extent of the purported litigation misconduct.  *Rembrandt Techs.*, 899 F.3d at

1278-79.  Instead, the District Court plainly awarded attorney's fees in an amount

"roughly equivalent to an award of double damages"—tied to enhancement of

damages—not based on specific litigation activity.[16]

The District Court's award of fees and costs constitutes an abuse of discretion because the decision was based on errors of law and clearly erroneous findings; therefore, the award should be vacated.

## CONCLUSION

For the reasons set forth herein and in its opening brief, Sherman respectfully requests that the Judgment be reversed or vacated and the case be remanded, if necessary, for further proceedings on all issues raised by Sherman on appeal.

Respectfully submitted,

Dated:  July 29, 2024

/s/ Jeffrey L. Snow
JEFFREY L. SNOW
JOSEPH V. MICALI
PRYOR CASHMAN LLP
Seven Times Square, 40th Floor
New York, New York 10036
(212) 421-4100
jsnow@pryorcashman.com
jmicali@pryorcashman.com

*Counsel for Defendants-Appellants*
*The WowLine, Inc., Sherman Specialty, Inc.,*
*and Sherman Specialty LLC*

---

[16] The District Court never concluded that the case is "exceptional" under § 285.

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1523

**Short Case Caption:** Dynamite Marketing, Inc. v. The WowLine, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,999 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 07/29/2024

Signature: /s/ Jeffrey L. Snow

Name: Jeffrey L. Snow